## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------------------

| | |
|---|---|
| **GOLDEN HILL PAUGUSSETT TRIBE OF INDIANS,** : | |
| : | |
| : | |
| : | **Civil Action No.** |
| *Plaintiff* : | **2:92 CV 00738 JBA** |
| : | |
| v. : | |
| : | |
| **M. JODI RELL, GOVERNOR OF THE STATE** : | |
| **OF CONNECTICUT ET AL.,** : | **AUGUST 24, 2006** |
| : | |
| *Defendants* : | |

---------------------------------------------------------------

## UNITED STATES' MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS AMENDED COMPLAINT

DEFENDANT,
UNITED STATES OF AMERICA

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

John B. Hughes
Assistant United States Attorney
Chief, Civil Division
157 Church Street, 23rd Floor
New Haven, Ct 06510
Federal Bar # ct05289
(203) 821-3700; fax: (203) 773-5373
john.hughes@usdoj.gov


Caroline Blanco
U.S. Department of Justice
Environment and Natural
Resources Division
Ben Franklin Station
PO Box 663
Washington, D.C. 2004-6208

## **TABLE OF CONTENTS**

Page

Table of Contents ................................................................................ i

I.      Introduction. ............................................................................ 1

II.     Background ............................................................................... 2

III.    Standard of Review ................................................................. 3

IV.     The Claim Against the United States Based on the Royal Proclamation of 1763
        Was Previously Dismissed And Is the Law of the Case. ................................................ 4

V.      The Action Against the United States Is Barred by the Statute
        Of Limitations of the Quiet Title Act .................................................... 7

        A       The Court Lacks Jurisdiction under the Quiet Title Act to
                Entertain a Claim Challenging the Federal Government's Interest
                In Real Estate Which Claim Accrued More than 12 Years Before
                the Action Was Commenced .............................................................. 7

        B.      As a Matter of Law Plaintiff Knew or Should Have Known of
                the United States' Interest in the Subject Property Due to its
                Possessing Record Legal  Title and Open Use of the Property as
                a United States Post Office For More  than Twelve Years Before
                this Action Was Commenced. .............................................................. 9

VI.     The Indian Claims Commission Act Provided the Exclusive Remedy for Historic
        Claims Against the United States, and Consequently the Complaint Should Be
        Dismissed Due to its Untimeliness and Lack of Jurisdiction  .................................... 13

VII.    Assuming *Arguendo* That the Action Is Not Barred by Either the Quiet Title Act or the
        Indian Claims Commission Act, the Court Nevertheless Lacks Jurisdiction Due To
        Plaintiff's Claim for Damages Against the United States Exceeding $10,000  ............ 16

VIII.   The Plaintiff Lacks Standing to Pursue Claims under the Indian Non-Intercourse
        Act of 1790 ................................................................................ 17

Conclusion ................................................................................ 23

## I.    **INTRODUCTION**

The United States of America submits this Memorandum of Law in support of its motion to dismiss the amended complaint for lack of subject matter jurisdiction, Fed. R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief can be granted.  Fed. R.Civ.P 12(b)(6).  This case has a long history and was stayed for many years while the Plaintiff pursued its application for federal recognition with the Department of the Interior, Bureau of Indian Affairs, ("BIA").  During that period, the Court requested the United States to  provide reports on the status of those proceedings.  Several such reports were filed by counsel for the United States on behalf of the BIA.  When the tribal recognition proceedings were completed, the Plaintiff had the case restored to the active docket and obtained leave to file an amended complaint.  The substance of the current amended complaint is identical to the previous amended complaint filed in November 1992.  The allegations against the United States are the same as those made in 1992 and pertain to the possession of a parcel of property located at 120 Middle Street, Bridgeport, Connecticut.  There are no allegations about the administrative proceedings in which Plaintiff sought federal tribal recognition and no claims seeking a review of the final agency decision in those proceedings under the Administrative Procedure Act ("APA").  5 U.S.C. § 701 et seq.

Since the United States is named as a party solely by virtue of its possession and claim of title to land at 120 Middle Street in Bridgeport, the motion to dismiss is based on grounds of sovereign immunity, statute of limitations, law of the case and lack of subject matter jurisdiction.  Plaintiff has not sought district court review of the final agency decision concerning tribal recognition although that decision and the administrative proceedings are relevant to the issue of Plaintiff's standing to assert its claims under the Nonintercourse Act.

1

The Plaintiff's claims against the United States are based on an alleged violation of the Proclamation of 1763 and not specifically on a violation of the Nonintercourse Act. While the defendant State of Connecticut has filed a motion for judgment on the pleadings and a thorough Memorandum of Law In Support thereof (joined in by many of the other defendants) that discusses the Plaintiff's lack of tribal status to pursue Nonintercourse Act claims, the United States does not find it necessary or appropriate to join in that motion. It does, however, support the general substance of the State's Motion and Memorandum.

For the reasons set forth below and due to the limited nature of the claim asserted against it, the United States believes its motion to dismiss should be granted.

## II.    <u>BACKGROUND</u>

Plaintiff Golden Hill Paugussett Tribe of Indians ("GHP" or "Plaintiff") commenced this action against various individuals, corporations and other legal entities, the City of Bridgeport, the State of Connecticut, and the United States seeking "to restore the Golden Hill Paugussett Tribe of Indians to possession of certain aboriginal and reservation lands in Bridgeport, Connecticut . . . ." Amended Complaint ("AC") ¶ 1. The gravamen of the complaint is Plaintiff's allegation that defendants are in possession of lands that were conveyed in violation of the Royal Proclamation of 1763, (AC ¶¶ 3,11, 19, 20, 30, 43, 45-158, 160) and in violation of the Indian Non-Intercourse Act, 25 U.S.C. § 177, (AC ¶¶ 3, 10, 22-29, 31-42, 44, 160). As a result, Plaintiff alleges that it ". . . retains the title and right of possession to the said land and the said land is not and never has been the property of any other person, party or entity." (AC ¶ 26).

Plaintiff specifically alleges that:

> Defendant, United States of America, is in possession of lands or claims title to or has an interest in lands commonly known as 120 Middle Street, Bridgeport, Connecticut, also being Block 913, Lot 1 in violation of the [Royal] Proclamation [of 1763] and the common law."

(AC ¶ 46). Similar allegations are made with respect to other parcels in the possession of the non-federal defendants. In the prayer for relief Plaintiff requests: "That the court decree, declare and adjudge that the plaintiff is the owner of and ha[s] the legal and equitable title and right of possession to such land, and restore plaintiff to immediate possession." In addition, the Plaintiff also seeks an accounting of all tax funds paid, money damages representing both the fair market value and the fair rental value of the land for the period of dispossession, attorney's fees and costs, and such other equitable relief as the court may deem appropriate. AC, Prayer for Relief.

As demonstrated below, to the extent this action seeks to challenge the legal and equitable title of the United States to the parcel named in paragraph 46 or the federal government's interest in or possession of the aforementioned parcel, it is barred by sovereign immunity, law of the case, the twelve-year statute of limitations applicable to actions under the Quiet Title Act, the five-year statute of limitations under the Indian Claims Commission Act and the jurisdictional provisions of 28 U.S.C. § 1346(a)(2). The court lacks subject matter jurisdiction with respect to the claim against the United States and it should be dismissed.

## III.   STANDARD OF REVIEW

The United States is filing this motion to dismiss on several grounds including lack of subject matter jurisdiction and sovereign immunity. Unlike the State of Connecticut and the other parties which have joined in the State's motion for judgment on the pleadings, the United

3

States has not answered the amended complaint and accordingly the motion to dismiss must be

decided on the facts as alleged in the complaint. *Merrit v. Shuttle, Inc.*, 245 F.3d 182, 186 (2d

Cir. 2001). All facts in the complaint are assumed to be true and are considered in the light

most favorable to the non-movant. *Manning v. Utilities Mut. Ins. Co., Inc*, 254 F.3d 387, 390

n.1 (2d Cir. 2001). Nevertheless, it is well established that a motion to dismiss is properly

granted when "it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d

Cir. 2001), *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984).

The allegations against the United States are quite limited. As noted above, paragraph

46 alleges that the United States is in possession of lands or claims tile to land commonly

known as 120 Middle Street, Bridgeport, Connecticut in violation of the Proclamation and

common law. Allegations concerning the Proclamation are set forth in paragraphs 11, 19 and

20. Even assuming these allegations to be true for purposes of this motion to dismiss, no relief

could be granted to Plaintiff against the United States since the claim itself is barred by

applicable statute of limitations, the doctrine of law of the case, and other jurisdictional

requirements.

## ARGUMENT

IV.   **THE CLAIM AGAINST THE UNITED STATES BASED ON THE ROYAL
      PROCLAMATION 0F 1763 WAS PREVIOUSLY DISMISSED AND IS THE
      LAW OF THE CASE.**

      A.   The Court Has Already Dismissed Claims Based on the Royal Proclamation of
           1763.

When the Court ruled on all pending motions in this case in 1993, it dismissed those

land claims which were based on an alleged violation of the Royal Proclamation of 1763 by

4

King George III of Great Britain (hereinafter "Proclamation").  *See Golden Hill Paugussett Tribe of Indians  v. Weicker*, 839 F. Supp 130, 135-139  (D. Conn. 1993).  In that Ruling the court quoted from the Proclamation and summarized Plaintiff's claims that the alienation of sixty-eight acres from the Paugussett Tribe in 1765 without the consent of King George III violated the Proclamation.  Although the court indicated that statutory interpretation and historical analysis suggested that the Proclamation was not intended to apply east of the Appalachian Mountains, the parties did not address that interpretation, so it was assumed that the territory named in the complaint fell within the Proclamation.  *Id*. at 135-36.  Noting that subject matter jurisdiction of federal district courts was limited to civil actions "arising under the Constitution, laws, or treaties of the United States,"  28 U.S.C. § 1331(a), the Court considered the nature of a royal proclamation.  The Court found that royal proclamations were issued under the royal perogative and did not involve lawmaking, did not have the force of law and were not intended to create a private right of action.  *Id*. at 136.  The Proclamation was meant to be temporary and was neither a "law" nor a law "of the United States."  *Id.* at 137.  The Court concluded that it did not have subject matter jurisdiction over any claims based on the Proclamation and the action was dismissed as to such claims.  *Id.* at 139.

Although the Plaintiff filed an appeal of other issues which were a part of that decision, it did not appeal the ruling regarding the lack of subject matter jurisdiction for claims based on an alleged violation of the Proclamation.  *See Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 55 (2d Cir. 1994):

> In addition....the Tribe's complaint refers to various portions of aboriginal and ancestral lands of unstated sizes and of a particular 68-acre lot of aboriginal land each conveyed in violation of a Proclamation of 1763 issued by King George III of Great Britain.  With respect to these lands, the complaint was dismissed, 839 F. Supp. at 135-39, and plaintiff has not sought review of that part of the district court's decision.

That decision is binding, is the law of the case, and bars Plaintiff's attempt to re-litigate all matters related to the Proclamation.

After completing the administrative federal recognition process which resulted in a final determination that Plaintiff was not an Indian tribe, the Plaintiff sought reinstatement of the case to the active docket and was granted leave to file an Amended Complaint which it did on July 20, 2006.   While adding several additional paragraphs relating to the claims for relief which this court allowed, *see Ruling on Plaintiffs' Motion For Leave To Amend Complaint*, [Document 323, July 13, 2006], the Plaintiff simply repeated the paragraphs alleging violations of the Proclamation.  AC ¶¶ 19-20, 30, 43, 45-158.  As noted above, the specific allegations against the United States are again only based on the Proclamation of 1763.  AC ¶ 46.  This allegation is identical to the one set forth in the Amended Complaint dated November 1992 which was dismissed in 1993.  *GHP v. Weicker*, 839 F. Supp. 130, 135-39.  The Plaintiff did not appeal the dismissal of these claims.  *GHP v. Weicker*, 39 F.3d 51, 55 (2d Cir. 1994).  The dismissal is the law of the case.  *See Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999), *cert. denied*, 528 U.S. 1189 (2000).

In *Rezzonico* the Second Circuit compared the doctrines of *res judicata* and law of the case as follows:

> The doctrine of law of the case is similar to the issue preclusion prong of *res judicata* in that it limits relitigation of an issue once it has been decided. However, law of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. *Res judicata* does not speak to direct attacks in the same case, but rather has application in subsequent actions.

*Rezzonico*, 182 F.3d at 149.  Quoting from the Supreme Court case *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382 (1983) the Second Circuit summarized: "As most commonly

defined, the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages in the same case." *Id.*.   There is no basis for departing from that principle in the instant case. Plaintiff's claims based on the Proclamation were dismissed by the district court, the Plaintiff chose not to appeal that ruling and the Court of Appeals specifically noted that fact in its ruling. *GHP v. Weicker*, 39 F.3d at 55.  There has been no supervening change in the law or the facts upon which Plaintiff could seek to have the district court revisit its previous ruling.

## V.    THE ACTION AGAINST THE UNITED STATES IS BARRED BY THE TWELVE-YEAR STATUTE OF LIMITATIONS OF THE QUIET TITLE ACT

A    The Court Lacks Jurisdiction Under the Quiet Title Act to Entertain a Claim Challenging the Federal Government's Interest In Real Estate Which Claim Accrued More than Twelve Years Before the Action Was Commenced

The Supreme Court held in *Block v. North Dakota*, 461 U.S. 273, 286 (1983), that "Congress intended the [Quiet Title Act] "QTA" to provide the exclusive means by which the adverse claimants could challenge the United States' title to real property."  It is well-established that the doctrine of sovereign immunity is a bar to suit against the United States, absent the government's consent to be sued.  *See United States v. Mitchell*, 766 U.S. 535, 538 (1980); *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005); *Vincent Murphy Chevrolet Co. v. United States*, 766 F.2d 449, 450 (10th Cir. 1985); *Stubbs v. United States*, 620 F.2d 775, 779 (10th Cir. 1980).  The Quiet Title Act ("QTA") provides a specific waiver of sovereign immunity in quiet title actions.  *See* 28 U.S.C. § 2409a(a).  However, this waiver of sovereign immunity is specifically limited by a twelve-year statute of limitation which provides:

7

> (g)  Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued.  Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g).

Timeliness under subsection (g) is a "jurisdictional prerequisite" to suit under § 2409a. *See United States v. Mottaz*, 476 U.S. 834 (1986); *Calhoun County v. United States*, 132 F.3d 1100, 1105 (5th Cir. 1998); *McIntyre v. United States*, 789 F.2d 1408, 1411 (9th Cir. 1986); *D.C. Transit System, Inc. v. United States*, 717 F.2d 1438, 1440 n.1 (D.C. Cir. 1983); *Bradford v. U.S. ex rel. Dept. of Interior*, 651 F.2d 700, 703 (10th Cir. 1981); *Kootenai Canyon Ranch, Inc. v. United States Forest Service*, 338 F.Supp. 2d 1129, 1133 (D. Mont. 2004) ("[The twelve-year] limitations period has been described as a 'central condition of the consent [to be sued] given by the [Quiet Title] Act.') *quoting Mottaz*, 476 U.S. at 843.  As a condition to suit against the sovereign, the twelve-year rule must be strictly construed in favor of the United States.  *Fulcher v. United States*, 696 F.2d 1073, 1076 (4th Cir. 1982); *see also Rosette Inc. v. United States*, 141 F.3d 1394, 1397 (10th Cir. 1998); *State of California v. Yuba Goldfields, Inc.*, 752 F.2d 393, 395-96 (9th Cir.), *cert. denied*, 474 U.S. 1005 (1985).   Conditions placed on laws waiving the sovereign immunity of the Unites States "must be strictly observed, and exceptions thereto are not to be lightly implied." *Block*, 461 U.S. at 287.  The twelve-year period of limitations governs any civil action against the United States to quiet title and is applicable to claims brought by Indians. *Mottaz*, 476 U.S. at 843.

In short, the QTA statute of limitations and the judicial interpretation of § 2409a(g) is clear.  Timeliness under subsection (g) is "a jurisdictional prerequisite to suit under [the QTA]".  *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980); *Bradford*, 651 F.2d at

8

703. Because Plaintiff commenced this action in November1992, if the government shows that Plaintiff "knew, or should have known" of the United States' claim to the property in dispute prior to November 1980, the claim is time-barred and the court lacks subject matter jurisdiction.

> B.    As a Matter of Law Plaintiff Knew or Should Have Known of the United States' Interest in the Subject Property Due to its Possessing Record Legal Title and Open Use of the Property as a United States Post Office For More than Twelve Years Before this Action Was Commenced.

The QTA's statute of limitations began to run when the Plaintiff knew or should have known about government claims adverse to the Plaintiff's interests. *See Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 737 (8th Cir. 2001); *see also McIntyre*, 789 F.2d at 1411; *Knapp*, 636 F.2d at 283; *Chesney v. United States*, 632 F.Supp. 867, 870 (D. Ariz. 1985) ("The standard of knowledge, 'knew or should have known,' does not permit a party to wait indefinitely to quiet title as against the government."). The language of the QTA statute does not require a clear and unambiguous claim to start the running of the twelve-year statute of limitations. *See Spirit Lake Tribe*, 262 F.3d at 738. "Knowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Knapp*, 636 F.2d at 283. The QTA covers disputes in which the United States claims "some interest," and it is immaterial whether that interest amounts to legal title or some lesser interest. *See Spirit Lake Tribe,* 262 F.3d at 738; *Knapp*, 636 F.2d at 282. The United States' claim simply must amount to a "cloud on plaintiff's title." *Knapp,* 636 F.2d at 282.

A claim accrues as soon as a potential claimant either is aware or should be aware of the existence of and source of his injury, not when he knows or should know that the injury

constitutes a legal wrong. *See Lee v. United States*, 809 F.2d 1406, 1410 (9th Cir. 1987), *cert. denied*, 484 U.S. 1041 (1988); *see also State of Hawaii v. United States*, 676 F.Supp. 1024, 1033 (D. Haw. 1988), *aff'd* 866 F.2d 313 (9th Cir. 1989). "The existence of one uncontroverted instance of notice suffices to trigger the [statute of] limitations period." *State of Nevada v. United States*, 731 F.2d 633, 635 (9th Cir. 1984).

Several cases demonstrate how the open and notorious use of disputed land by the United States effectively triggers the QTA statute of limitations. For example, in *State of Nevada v. United States*, *supra*, the Ninth Circuit held that the State could not successfully controvert United States' evidence which showed that Nevada "knew or should have known" about the government's claim to the Ruby Lake bed, the disputed land. The court relied heavily on evidence of the federal government's management of the disputed land as a wildlife refuge since 1937. *Id.*

In *Fulcher v. United States*, 696 F.2d 1073 (4th Cir. 1982), the plaintiff sought to quiet title to land in North Carolina's Cape Hatteras National Seashore Recreational Area. The evidence presented in that case showed that the National Park Service had constructed a campground on the disputed property and that the campground was "full or overflowing" on weekends by August, 1964, more than twelve years before the plaintiff filed his lawsuit. *Id.* at 1077. The court concluded that "[a] prudent landowner exercising reasonable diligence should, as a matter of law, have discovered the government's open and notorious occupation of the land . . . ." *Id.* Thus, the court held that the plaintiff "should have known" of the government's title claim, and dismissed his action with prejudice. *See also Spirit Lake Tribe*, 262 F.3d at 737-48 (holding that tribe should have been aware of government's interest in land because government used land as part of a highly publicized, significant public works project

10

more than twelve years before tribe filed its claim); *Hart v. United States*, 585 F.2d 1280, 1282-84 (5th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979) (Plaintiff's claim time-barred because United States was operating an air force base on the disputed property for more than twelve years).

In *Park County, Montana v. United States*, 626 F.2d 718, 721 n.6 (9th Cir. 1980), *cert. denied,* 449 U.S. 1112 (1981), the court held that merely posting a sign claiming the Forest Service's interest in the disputed land and constructing a rock barrier across the trail in front of the sign was sufficient notice to bar the plaintiff's quiet title claims. Therefore, the court concluded, "the Forest Service claimed ownership and jurisdiction of the land . . . by posting notice of its interest." 626 F.2d at 721.

Courts have likewise found that knowledge of an interest in land held by the United States accrues when there is actual or constructive notice of the existence of a deed conveying the land to the government. *See e.g., Hawaii v. United States*, 866 F.2d 313, 313 (9th Cir. 1989); *Yuba Goldfields*, 752 F.2d at 296-97.

Persons seeking to quiet title are obligated to plead the date on which they or their predecessors in interest knew or should have known of the claim of the United States, and the failure to do so warrants dismissal of the complaint. *Buchler v. United States*, 384 F.Supp. 709, 712-13 (E.D. Cal. 1974). Plaintiff has not pled these essential allegations making dismissal appropriate. Nevertheless, there is no doubt that the plaintiffs knew or should have known of the longstanding interest that the United States has in the subject property, and that this action is untimely. The United States has been openly using the subject property as a Post Office for more than twelve years. Indeed, any doubt as to when the United States came into lawful possession of the property in question is irrefutably established by the 1931 Order of

11

Condemnation, duly recorded in Volume 635, Pages 413-422 of the Bridgeport Land Records.[1] *See* Exhibit "A".  In addition, a notice was published in the Federal Register in 1971, advising of the transfer from the former Post Office Department to the U.S. Postal Service under the authority of the Postal Reorganization Act, of the property at 120 Middle Street, including in that transfer the "full power of disposition and control . . . [and] the right to sell, lease, or mortgage" the property.  36 Fed. Reg. 17908-17972, 17923 (September 4, 1971).  That the United States has openly used this property for myriad governmental purposes since 1931—certainly as early as 1980—cannot be seriously contested.  *See also*  Exhibit "B" (copy of declaration of Andrew Tengeres which was attached to Federal Defendant's 1993 Memorandum as Exhibit B).[2]

The Federal Rules of Civil Procedure require a court to dismiss an action whenever it appears that the court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).  The QTA statute of limitations and judicial interpretation of § 2409a(g) is clear.  The Plaintiff's claim against the United States is barred by the QTA's twelve-year statute of limitations.  Because the claim falls outside the QTA's limited waiver of sovereign immunity for suits to quiet title as against the United States, the Court lacks subject matter jurisdiction, and the complaint against the United States must be dismissed.

---

[1] A certified copy f the 1931 Order of Condemnation is a matter of record in this case as it was filed as Exhibit A to the Memorandum of Law In Support of Federal Defendant's Motion to Dismiss, filed January 8, 1993.  A photocopy is attached hereto as Exhibit A for convenience.

[2] In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) the court may refer to evidence outside the pleadings which may be presented by affidavit or otherwise.  *Dunn v. U.S. Federal Bureau of Prisons*, 2006 WL 695805, *9 (D. Conn.) citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) and *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)

**VI.    THE INDIAN CLAIMS COMMISSION ACT PROVIDED THE EXCLUSIVE
REMEDY FOR HISTORICAL CLAIMS AGAINST THE UNITED STATES,
AND CONSEQUENTLY THE COMPLAINT SHOULD BE DISMISSED DUE
TO ITS UNTIMELINESS AND FOR LACK OF JURISDICTION.**

In 1946 the Indian Claims Commission Act ("ICCA") established a procedure to

provide a monetary damages remedy for claims against the United States on behalf of any

Indian tribe, band, or other identifiable group of American Indians. 25 U.S.C. §§ 70 to 70v-2

(1976).[3]  Such claims had to be presented to the Indian Claims Commission within five years

of August 13, 1946, and could not otherwise be submitted to any court, administrative agency,

or to Congress.

> The Commission shall receive claims for a period of five years
> after August 13, 1946, and no claim *existing before* that date but
> not presented within such period may thereafter be submitted to
> any court or administrative agency for consideration, nor will
> such claim thereafter be entertained by the Congress.

Exhibit C, 25 U.S.C. § 70k (emphasis added).

The ICCA's purpose, explicit provisions, and legislative construction clearly

demonstrate that the "chief purpose of the [ICCA was] to dispose of the Indian Claims

problem with finality."  *United States v. Dann*, 470 U.S. 39, 45 (1985) (quoting H.R. Rep. No.

1466, 79th Cong., 1st Sess. 10 (1945)).  As the Claims Court noted, "the purpose of that statute

of limitations was to ensure that 'there . . . [would] be a prompt and final settlement of all

claims between the government and its Indian citizens, . . . and bring them to a conclusion

once and for all."  *Te-Moak Bands of Shoshone Indians v. United States*, 18 Cl. Ct. 74, 80

---

[3]  The Indian Claims Commission Act of August 13, 1946, ch.959, 60 Stat. 1049 was formerly codified, as
amended, at 25 U.S.C. §§ 70 to 70v-2 (1976) but is omitted from the current Code because the Indian Claims
Commission was terminated on September 30, 1978.  A copy of the ICCA as previously codified is attached as
Exhibit C.

(1989), *aff'd*, 948 F.2d 1258 (Fed. Cir. 1991), (quoting *U.S. v. Dann, supra*, 470 U.S. at 46).

The legislative history of the ICCA reflects the intention of Congress that the act "would

require all pending Indian claims of whatever nature, contractual and noncontractual, legal and

nonlegal, to be submitted to this fact finding body within five years and would outlaw claims

not so submitted." H.R. Rep No. 1466, 79th Cong., 1st Sess. (1945), *quoted in Navajo Tribe v.*

*State of New Mexico*, 809 F.2d 1455, 1465(10th Cir. 1987). In that case the Navajo Tribe

argued that the Indian Claims Commission did not have jurisdiction over claims to land. The

court disagreed, stating:

> The language [in the ICCA, § 2, 25 U.S.C. § 70a] is sweeping, including even
> claims "based upon fair and honorable dealings" which did not otherwise
> constitute recognized actions at law or equity. As the legislative history
> indicates, Congress did not enumerate the cognizable claims under the new Act
> to narrowly circumscribe the commission's jurisdiction. Rather, Congress
> desired to finally provide a forum for the resolution of all possible accrued
> claims.
>
>> Congress wished to settle all meritorious claims of long standing
>> of Indian Tribes and bands whether those claims where of a legal
>> or equitable nature which would have been cognizable by a court
>> of the United States had the United States been subject to suit
>> and the Indians able to sue, or whether those claims were of a
>> purely moral nature *not* cognizable in courts of the United States
>> under any existing rules of law or equity.
>
> *Otoe & Missouria Tribe of Indians v. United States*, 131 Ct. Cl. 593, 131 F.Supp. 265,
> 275 (Ct . Cl. 1955)(emphasis in original).

*Id*. at 1465.

Indeed, in *Navajo Tribe*, the court, in rejecting the Tribe's assertion that it could sue for

ejectment notwithstanding the ICCA, stated:

> The Tribe, even if it had timely filed its claim under the ICCA, could not have quieted
> title in these lands or maintained an action in ejectment. However, its assertion of
> present title *could* have been heard before the [Indian Claims] Commission . . . . The
> Tribe simply would have had to accept just monetary compensation if the Commission

14

found their claim to title valid. This restriction as to remedy represents a fundamental policy choice made by Congress out of the sheer, pragmatic necessity that, although *any* and *all* accrued claims could be heard before the Commission, land title in 1946 could not be disturbed because of the sorry injustices suffered by native Americans in the eighteenth, nineteenth, and early twentieth centuries. Those injustices would have to be recompensed through monetary awards.

809 F.2d at 1467 (emphasis in original).

Claims accruing before 1946 and filed with but not yet adjudicated by the Commission were transferred to the United States Court of Claims, Act of October 8, 1976, 90 Stat. 1990, later called the Claims Court (and now the United States Court of Federal Claims[4]), which inherited the Court of Claims' ICCA jurisdiction. The Court of Federal Claims also now has jurisdiction of any claim against the United States accruing *after* August 13, 1946 in favor of any tribe, band, or other identifiable group of American Indians "whenever such claim is one arising under the Constitution, laws or treaties of the United States...." 28 U.S.C. § 1505.

The gravamen of the Amended Complaint as against the United States is the supposed violation of the Proclamation and federal common law. AC ¶ 46. Even if the United States had waived sovereign immunity for a claim against it premised on its possessing land that had originally been conveyed in violation of the Proclamation, the operative event occurred - whether it be the original conveyance of the land in 1765 (AC ¶ 19) or the government's 1931 decision to condemn the land - and the claim accrued by 1946, the critical date for an action under the ICCA. "The plaintiff's cause of action against the U.S. must have accrued well before August 13, 1946—the critical date because the Indian Claims Commission Act . . . expressly created an *exclusive* remedy against the U.S. for tribal claims accruing before that date and established a five-year statute of limitations." *Sokaogon Chippewa Community v.*

---

[4] On October 9, 1992, the Federal Courts Administration Act of 1992, P.L. 102-572, 106 Stat. 4506 (1992) became effective, changing the name of the Claims Court to the United States Court of Federal Claims.

*State of Wiconsin, et al.*, 879 F.2d 300, 302 (7th Cir. 1989) (emphasis in original); *see also Oglala Sioux Tribe v. United States*, 650 F.2d 140, 143 (8th Cir. 1981), *cert. denied*, 400 U.S. 942 (1982) (ICCA deprived district court of jurisdiction to "afford[] the Tribe any other form of relief"); *San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860, 895 (D. Ariz. 2003), *aff'd*, 417 F.3d 1091 (9th Cir. 2005)(finding that because the Tribe's breach of trust claim should have been brought before the ICC, the court lacked subject matter jurisdiction to consider the claim).

Assuming *arguendo* that Plaintiff would have qualified as an Indian tribe, band, or identifiable group of Indians (which it is now clear they would not) Plaintiff did not pursue a claim under the ICCA within the five-year statute of limitations and is now barred from doing so since the ICCA provides that such a claim can not "...thereafter be submitted to any court or Administrative agency . . . nor . . . entertained by the Congress." ICCA, § 12 , 25 U.S.C. § 70k (1976). To the extent Plaintiff's claim against the United States accrued prior to 1946 it is clearly barred by the five year statute of limitations in the ICCA. To the extent Plaintiff would assert that its claim accrued *after* 1946, this court is without jurisdiction as any such claim would only lie in the United States Court of Federal Claims.

**VII.  ASSUMING <u>ARGUENDO</u> THAT THE ACTION IS NOT BARRED BY EITHER THE QTA OR THE ICCA, THE COURT NEVERTHELESS LACKS JURISDICTION DUE TO PLAINTIFF'S CLAIM FOR DAMAGES AGAINST THE UNITED STATES EXCEEDING $10,000.**

Congress has made the Court of Federal Claims the exclusive forum for claims against the United States seeking damages in excess of $10,000, "founded . . . upon the Constitution, or any Act of Congress . . . ." 28 U.S.C. § 1346(a)(2); 28 U.S.C. § 1491(a)(1). *See Bowles v. U.S. Army Corps of Engineers*, 841 F.2d 112, 113 (5th Cir.), *cert. denied*, 488 U.S. 803 (1988);

*Amoco Production Co. v. Hodel*, 815 F.2d 352, 358 (5th Cir. 1987), *cert. denied*, 487 U.S.

1234 (1988).  It would appear that Plaintiff is not even making a claim against the United

States founded on the Constitution or an Act of Congress.  The Plaintiff's only allegations

against the United States allege a violation of the Proclamation of 1763 and the common law.

AC ¶ 46.  This Court previously ruled that the Proclamation is not a law of the United States.

*GHP v. Weicker*, 859 F. Supp. at 137.

      To the extent Paintiff argues that its claim against the United States is also based on a

violation of  Indian Nonintercourse Act, 25 U.S.C. § 177, it is a claim for which "[t]he amount

in controversy exceeds $100,000, exclusive of interest and costs." AC ¶ 2. Even assuming

there are no other jurisdictional impediments, the Plaintiff can maintain its claim in District

Court only if it is willing to waive the recovery of damages against the United States in excess

of the $10,000 jurisdictional limit.  *See Smith v. Secretary of the Air Force*, 855 F.2d 1544,

1553 (Fed. Cir. 1988).  There is no indication in its pleadings that plaintiff is willing to make

such a  waiver.  Accordingly, this court lacks subject matter jurisdiction and the Amended

Complaint against the United States must be dismissed.

## VIII.  THE PLAINTIFF LACKS STANDING TO PURSUE CLAIMS UNDER THE INDIAN NON-INTERCOURSE ACT OF 1790

      Although the Plaintiff does not make any specific allegations in the Amended

Complaint against the United States based on the Indian Nonintercourse Act, 25 U.S.C. § 177,

it makes such claims against many of the other defendants, including the City of Bridgeport

and the State of Connecticut. AC ¶¶ 42, 44.   These defendants, led by the State of

Connecticut, have argued in their motions for judgment on the pleadings that the Plaintiff lacks

standing to make such claims since it does not have the requisite tribal status. *See*

17

*Memorandum of Law In Support of Motion for Judgment on the Pleadings of Defendant Governor of the State of Connecticut*, filed on  August 2, 2006 at 8-29.  The State argues that tribal status is required for both standing to file and establishing the merits of a claim under the Nonintercourse Act.  To make such claims the Plaintiff must demonstrate that it was and continues to be an Indian tribe.  The Department of the Interior has determined that Plaintiff is not an Indian tribe after proceeding through the federal administrative acknowledgment process.  69 Fed. Reg. 34388 (June 21, 2004).  The United States agrees with the State and other defendants that Plaintiff's lack of tribal status deprives the court of subject matter jurisdiction since standing is a jurisdictional prerequisite.  *Id.* at 8.

The final administrative decision of the Department of the Interior denying federal recognition is attached to the *State's Memorandum* as Exhibit A.  The *State's Memorandum* addresses the issues concerning the interplay between establishing tribal status for purposes of standing under the Nonintercourse Act and for purposes of federal recognition under the comprehensive Department of the Interior regulations.[5]

Included in that discussion is the State's reference to the Supreme Court's decision in *Montoya v. United States*, 180 U.S. 261 (1901).  The United States does not agree with the State of Connecticut that the court must apply the standards set forth in *Montoya* to determine

---

[5] The United States generally agrees with the discussion in the *State's Memorandum* dealing with the Department of the Interior's acknowledgment process for the GHP.  The summary on page 5 of the *State's Memorandum* accurately recites the outcome of those proceedings.  The June 14, 2004 Final Determination Against Federal Acknowledgment of the Golden Hill Paugussett Tribe is correctly distilled and the State properly notes that the Department of the Interior, "... found that the GHP had not existed as a social or political community for nearly all of the last two centuries and that the GHP's  members could not even prove that they descended from a historical tribe." Most importantly, the State notes that the GHP's requests for review by the Interior Board of Indian Appeals and the Secretary of the Interior have been rejected, that the final determination is the final and effective agency action, citing 25 C.F.R. § 83.11(h), and that the GHP has not filed a district court appeal of the final determination under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

tribal status.[6]   Rather, the United States' position is that once the Department of the Interior

has ruled that a group is not an Indian tribe, the court should defer to that determination.

There are numerous factors taken into account before an Indian group may become

federally recognized.  25 C.F.R. § 83.7.  *See Golden Hill,* 39 F.3d at 60 ("The Department of

the Interior's creation of a structured administrative process to acknowledge 'nonrecognized'

Indian tribes using uniform criteria, and its experience and expertise in applying these

standards, has now made deference to the primary jurisdiction of the agency appropriate.").

This Court, having been instructed to defer to the primary jurisdiction of the Department of the

Interior, should now apply the findings of the expert agency and rule that Plaintiff lacks tribal

status and has no standing to make claims under the Nonintercourse Act.    ("The BIA's

resolution of these factual issues regarding tribal status will be of considerable assistance to the

district court in ultimately deciding Golden Hill's Nonintercourse Act claims.") 39 F.3d at 60.

Historically, the courts' lack of "judicially discoverable or manageable criteria by

which to accord federal recognition" supported the longstanding decisions to defer tribal status

decisions to Congress and the Executive.  *Samish Indian Nation v. United States,* 419 F.3d

1355, 1372 (Fed. Cir. 2005).  The Department of the Interior's issuance of acknowledgment

---

[6]The Montoya case is limited by its unique facts.  In considering the meanings of "tribe" and "band" within the meaning of the Indian Depredation Act (Act of March 3, 1891, 26 Stat. 851), the Supreme Court stated in *Montoya* that:

> By a "tribe" we understand a body of Indians of the same or a similar race, united in a community under one leadership or government, and inhabiting a particular though sometimes ill-defined territory; by a "band," a company of Indians not necessarily, though often, of the same race or tribe, but united under the same leadership in a common design.

180 U.S. at 266.  This statement is often quoted to support a broad and simple definition of "tribe," but such a construction is misleading because it divorces the summary statement from the factual underpinnings relied upon by the Court.  The underlying facts in *Montoya* establish a very strict standard for what constitutes a "tribe" under the Indian Depredation Act, based on a tribe's organized, armed and continuous resistance over several years to the effort of the United States army to control it, which resulted in the death of an Indian leader and most of his followers.  *Montoya,* 180 U.S. at 269-70.  These underlying facts establish a stricter standard than the seven criteria in the Department of the Interior's regulations.  Thus even if the court were to apply *Montoya*, since the Plaintiff did not satisfy the seven criteria in the federal acknowledgment regulations Plaintiff would not meet the stricter *Montoya* standards.

regulations in 1978, however, modified the role of the judiciary in tribal status decisions. That is, the Department of the Interior's adoption of the acknowledgment regulations then provided the courts measurable criteria to review acknowledgment decisions under the Administrative Procedure Act. (APA). *Id.* Nevertheless, the adoption of acknowledgment regulations and establishment of criteria did not end the courts' general rule of non-justiciability. *Id.* (citing *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1276 (9th Cir. 2004); *Miami Nation of Indians of Ind., Inc. V. Dep't of Interior*, 255 F.3d 342, 346-48 (7th Cir. 2001); *Shoshone Bus. Council For and on Behalf of W. Shoshone Tribe of Duck Valley Reservation v. Babbit*, 1 F.3d 1052, 1057 (10th Cir. 1993); *James v. United States Dep't of Health & Human Services*, 824 F.2d 1132, 1137 (D.C. Cir 1987). Although the Department subjected its acknowledgment process to APA review, this "limitation alters neither the commitment of the federal recognition determination to the political branches, nor the regard for separation of powers that precludes judicial evaluation of those criteria in the first instance." *Id.* at 1373.

While the Second Circuit framed the issue of tribal status in terms of the intersection of judicial authority over Indian land claims and administrative authority to determine whether a given group of Indians is entitled to tribal recognition, it recognized that the executive agency and the federal courts have overlapping, though not identical, jurisdiction and that judicial authority is often best exercised in conjunction with the administrative. *GHP v. Weicker*, 39 F.3d at 54. At that time in 1994 the administrative acknowledgment process for the GHP had not yet been completed. The GHP had submitted an application and some administrative proceedings had been held but a final decision was not ready to be issued. There is a far different picture presented today. The administrative acknowledgment proceedings for GHP have been concluded after many years with a large volume of documents having been

submitted by all interested parties and then reviewed by the agency under the applicable

criteria in the acknowledgment regulations.   Once the Department of the Interior has ruled on

a petition for federal recognition the court should defer to that determination subject only to a

review under the APA.  *See Miami Nation of Indians of Indiana, Inc. v. United States*

*Department of the Interior*,   255 F3d 342 (7th Cir. 2001).

The United States does agree with the arguments set forth in the *State's Memorandum*

concerning the recent decision of the district court in *New York v. Shinnecock Indian Nation*,

400 F. Supp 2d 486 (E.D.N.Y. 2005).  As noted in the *State's Memorandum* that decision is

clearly distinguishable on the basis that the GHP have already been denied recognition by the

Department of the Interior, whereas the Department has not yet reached a determination on the

pending petition for acknowledgment by the Shinnecock.

The last section of the State's Memorandum (Section V., pages 29-38) discusses the

recent cases of *City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197 (2005) and *Cayuga*

*Indian Nation of New York v. Pataki*,  413 F.3d 266 (2d Cir. 2005), *cert. denied*, 126 S.Ct.

2021, 2022 (2006) and the equitable doctrines of laches, long acquiescence and impossibility.

The United States does not join in these equitable arguments at this time since there are

sufficient legal grounds to dismiss the Plaintiff's claims against the United States based on

statute of limitations, sovereign immunity and lack of subject matter jurisdiction. This Court

need not address these equitable defenses with regard to the claims against the United States at

the present stage of the case.

## **CONCLUSION**

To the extent the Amended Complaint reiterates a claim against the United States based on the Proclamation of 1763 such claim was previously dismissed and should be dismissed again under the doctrine of law of the case. Any other claim against the United States, whether seeking monetary or equitable relief, is barred by the statute of limitations in the Quiet Title Act and in the Indian Claims Commission Act, and thus the court lacks jurisdiction, and the complaint should be dismissed with prejudice. In the alternative, the court lacks jurisdiction to the extent the Amended Complaint seeks relief against the United States in excess of $10,000, and it should therefore be dismissed. Finally, Plaintiff lacks standing under the Nonintercourse Act to bring this action.

Respectfully submitted,

DEFENDANT,
UNITED STATES OF AMERICA

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY
       /s/
John B. Hughes
Assistant United States Attorney
Chief, Civil Division
157 Church Street, 23rd Floor
New Haven, Ct 06510
Federal Bar # ct05289
(203) 821-3700; fax: (203) 773-5373
john.hughes@usdoj.gov

Caroline Blanco
U.S. Department of Justice
Environment and Natural
Resources Division
Ben Franklin Station
PO Box 663
Washington, D.C. 2004-6208

22

## CERTIFICATION OF SERVICE

This is to certify that a copy of the within and foregoing United States' Memorandum of Law In Support of Motion to Dismiss was electronically filed on this 24th day of August, 2006, with notice of this filing served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF System.

Bernard Wishnia
Roseland Professional Building
204 Eagle Rock Avenue
Roseland, NJ 07068

William A. Wechsler
Bailey & Wechsler
583 Old Slocum Road
Hebron, CT 06248

Michael K. Murray
Anthony M. Feeherry
Andrea L. Studley
Allan van Gestel
Goodwin, Procter & Hoar
Exchange Place, 2nd Floor
53 State Street
Boston, MA 02109-2881

Gerald L. Garlick
Linda Clifford Hadley
Krasow, Garlick & Hadley
One State Street
Hartford, CT 06103

Jeffrey R. Babbin
Noel E. Hanf
Wiggin & Dana
One Century Tower
265 Church Street, P. O. Box 1832
New Haven, CT 06508-1832

Thomas Gugliotti
Updike, Kelly & Spellacy, P. C.
One State Street, P. O. Box 231277
Hartford, CT 06123-1277

Michael D. O'Connell
O'Connell Flaherty & Attmore
280 Trumbull Street
Hartford, CT 06103-3598

Richard Blumenthal
Mark F. Kohler
Susan Quinn Cobb
Daniel R. Schaefer
Office of the Attorney General
55 Elm Street, P. O. Box 120
Hartford, CT 06141-0120

John J. Kelly, Jr.
Cantor, Floman, Gross, Kelly,
Amendola & Sacramone
378 Boston Post Road
P. O. Drawer 966
Orange, CT 06477

Richard L. Albrecht
Austin K. Wolf
Cohen & Wolf, P. C.
1115 Broad Street, P. O. Box 1821
Bridgeport, CT 06604

Henry C. Winiarski, Jr.
941 Wethersfield Avenue
Hartford, CT 06114-3137

23

Geoffrey A. Hecht
Caplan, Hecht, Scanlon & Mendel
20 Trumbull Street, P. O. Box 9505
New Haven, CT 06534

Janet L. Janczewski
The Southern Connecticut Gas Co.
885 Main Street
Bridgeport, CT 06604

Robert L. Berchem
Richard J. Buturla
Warren L. Holcomb
Berchem, Moses & Devlin, P. C.
75 Broad Street
Milford, CT 06460

Caroline Blanco
U. S. Department of Justice
Ben Franklin Station, P. O. Box 663
Washington, D.C. 20044-6208

Judith A. Mauzaka
Gerald T. Weiner
Roberta Napolitano
Weinstein Weiner Ignal Vogel & Shapiro
350 Fairfield Avenue, P. O. Box 9177
Bridgeport, CT 06601

Stuart A. Margolis
132 Temple Street
New Haven, CT 06510

Howard R. Wolfe
Goldman, Gruder & Woods
125 Mason Street
Greenwich, CT 06830

Paul Ruszczyk
Highland Professional Center
408 Highland Avenue
Cheshire, CT 06410

John Pirina, Jr.
Law Offices of Arnaldo J. Sierra
215 Washington Street
Hartford, CT 06106

Kimball Haines Hunt
Hunt, Leibert, Chester & Jacobson, P.C.
50 Weston Street
Hartford, CT 06120-4626

James A. Trowbridge
Quinnipiac University
Law School Clinic
275 Mount Carmel Avenue
Hamden, CT 06518-1946

Michael Stanton Hillis
Dombroski, Knapsack & Hillis
129 Whitney Avenue
New Haven, CT 06510

Mark T. Anastasi
City of Bridgeport
Office of the City Attorney
999 Broad Street, 2nd Floor
Bridgeport, CT 06604-4328

Thomas E. Behuniak
44 Greenwood Circle
Seymour, CT 06483

Kenneth M. Rozich
Law Firm of Edward D. Jacobs
P. O. Box 1952
New Haven, CT 06509

_____/s/_____
JOHN B. HUGHES
CHIEF, CIVIL DIVISION