UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

GOLDEN HILL PAUGUSSETT TRIBE
    OF INDIANS

    Plaintiff,

vs.

M. JODI RELL, GOVENOR OF THE STATE OF
CONNECTICUT, et al

    Defendants
_____

CASE NO.

2:92-cv-00738 (JBA)

SEPTEMBER 5, 2006

### MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

The Plaintiff, Golden Hill Paugussett Tribe of Indians, hereby submits the following Memorandum in Opposition to the Defendant's Governor of the State of Connecticut ("State") Motion for Judgment on the Pleadings dated August 2, 2006.[1]

---

[1] Other Defendants, including The United Illuminating Company and The Southern Connecticut Gas Company, have moved for judgment on the pleadings by joining in and adopting the arguments set forth in the aforementioned motion filed by the State. The present Memorandum in Opposition responds to all of the claims asserted in these motions as well.

I.   **FACTUAL BACKGROUND**.

The Plaintiff, Golden Hill Paugussett Tribe of Indians ("Golden Hill"), brought three separate land claims actions, which the Court has consolidated. (*Golden Hill Paugussett Tribe of Indians v. Rell*, No. 2:92cv738(JBA); *Golden Hill Paugussett Tribe of Indians v. Nyzio*, No. 3:93cv26(JBA); and *Golden Hill Paugussett Tribe of Indians v. Bachyrcz*, No. 3:93cv694(JBA)). Golden Hill commenced the present action against various individuals, corporations and the State of Connecticut seeking to "restore the Golden Hill Paugussett Tribe of Indians to possession of certain aboriginal and reservation lands in Bridgeport, Connecticut, which lands are subject to the Indian Non-Intercourse Act, 25 U.S.C. §177 and which lands were taken in violation of the common law" and seeking money damages as a result of its denial of the use and enjoyment of any rental income and profits rightfully due to it from said land and the fair market value of the land.[2] Amended Complaint ¶¶1; 161; 162. It is alleged that Golden Hill is "an Indian tribe which has resided in the State of Connecticut since time immemorial." Amended Complaint ¶4. By virtue of Connecticut General Statute §47-59a, *et seq*, Golden Hill is recognized by the State of Connecticut as an indigenous Indian tribe, and has two reservations located in Trumbull, Connecticut and Colchester, Connecticut. Amended Complaint ¶4. It is alleged that the Defendants have wrongfully kept Golden Hill "out of possession of the said land … in violation of the federal restriction against extinguishment of

2

Indian title, except by action of the United States, Article I, §8 of the Constitution of the United States and 25 U.S.C. §177 and in violation of the Proclamation of 1763 and of the common law."[3] Amended Complaint ¶160. As a result, Golden Hill alleges that it is entitled to, among other things,: (1) equitable title and right of immediate possession to such land; (2) money damages representing the fair market value of the said land for the entire period of its dispossession; and (3) money damages representing the fair rental value and profits of the said land for the entire period of its dispossession. Amended Complaint, Prayer for Relief, ¶¶1, 3, 4.

In an answer dated January 15, 1993 the State of Connecticut contended that Golden Hill's complaint failed to state a viable cause of action and that the district court lacked subject matter jurisdiction.  On July 21, 1993 the District Court (Dorsey, J.) granted defendant's motions to dismiss without prejudice, explaining that Golden Hill was required to exhaust administrative procedures for tribal recognition through the Bureau of Indian Affairs ("BIA") prior to seeking a judicial determination of tribal status under the Indian Non-Intercourse Act, 25 U.S.C. §177 ("Non-Intercourse Act.). *Golden Hill Paugussett Tribe of Indians v. Weicker*, 839 F.Supp. 130, 135 (1993).  The Second Circuit concluded that the District Court was incorrect in holding that Golden Hill did not have standing to bring these actions and that it had failed to exhaust administrative remedies by not seeking recognition first through the BIA;

---

[2] On August 31, 2006, Golden Hill moved to withdraw the action with respect to the United States of America and others.
[3] In fact, the claims under the Proclamation of 1763 have previously been dismissed by the court and the Plaintiff

however, it did impose the principle of primary jurisdiction. *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58-61 (2d Cir. 1994). The Second Circuit remanded the cases to the District Court with orders to stay the matters, while noting that the administrative action and the court's ultimate decision on the Non-Intercourse Act claims "… might not always yield identical results." *Id.* at 60. As the State concedes, the Second Circuit <u>reversed</u> the district court's holding that the court was bound by the BIA decision. See State's Memorandum, p. 4.

Without objection by any party these actions have remained dormant since the Second Circuit opinion in 1994 while in fact administrative proceedings in the BIA pended. The BIA rejected Golden Hill's petition on June 14, 2004. On May 18, 2005, Golden Hill requested that the matter be restored to active status. At any time along the way, the State or any of the other defendants could have requested that the matter be restored to the active docket and litigated but chose not to. The State and the Defendants never pressed the issue, and it is disingenuous for them to claim that Golden Hill has somehow delayed the prosecution of this case. Upon filing of its Amended Complaint on July 19, 2006, the State moved for judgment on the pleadings.

---

will be moving to amend its complaint again, to remove any such claims or allegations.

II.     **ARGUMENT**.

    A.   **Legal Standard for Motion for Judgment**.

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Kent v. General Motors Regional Personnel Center-East Region*, 179 F.Supp.2d 102, 108 (W.D.N.Y. 2001). In both postures, "the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998). As such, "plaintiff need only have complied with the liberal pleading standard of Rule 8, providing a 'short, plain statement' of [its] entitlement to relief that give [s] the defendant fair notice of what [its] claim is and the grounds upon which it rests." *Bishop v. Toys ""R" Us-NY LLC*, 414 F.Supp.2d 385, 389 (S.D.N.Y. 2006) (internal quotation marks and citation omitted). Judgment on the pleadings is "appropriate *only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.*" *Weinstein v. Albright,* 261 F.3d 127, 131–32 (2d Cir. 2001) (quotation marks and citations omitted) (emphasis added). The issue is "not whether the plaintiff will prevail, but whether [it] is entitled to offer evidence to support [its] claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D. Conn 1990).

      B.  **The Issues Presented by the Amended Complaint are Not Appropriate for Decision on the Pleadings.**

Despite the fact that it is a Motion for Judgment, the State asks the Court to make numerous factual determinations regarding the propriety of the BIA process as well as the tribal status of Golden Hill, which is improper for a decision on the pleadings. The State's motion is replete with factual assumptions from outside of the pleadings. See State's Memorandum, pp. 2-3. As one extreme example, the State even asks the court to review materials relating to the acknowledgment petitions of both the Eastern Pequot and Schaghticoke Indians, which have nothing to do with Golden Hill's land dispute. The State is going far afield from the scope of a motion for judgment on the pleadings in the present case. The State's motion is at best a motion for summary judgment.[4] In support of its claim that this court may consider the documents attached to its motion for judgment without converting it into a motion for summary judgment, the State relies on *Sira v. Morton*, 380 F3d. 57, (2d. Cir. 2004) and *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002). See State's Memorandum, p. 6. However, it is of note that *Sira* held that any such documents must either be "incorporated by reference" or "integral to the complaint;" thus, the Second Circuit determined that "a district court *must*

---

[4] If the Court treats the State's motion as a motion for summary judgment under Rule 56, the full BIA record would be put before the court and it would be obvious that there is a genuine issue of material fact as to whether Golden Hill is a tribe for purposes of federal recognition. In addition, to the extent that the State focuses on the BIA process and erroneously characterizes it as credible, Golden Hill will need to conduct discovery to flesh out its concerns with the nature of the BIA process and its failings.

6

*convert* a motion for judgment on the pleadings to one for summary judgment *if the motion includes material outside the pleadings…*" *Sira*, 380 F3d. at 66-67 (emphasis added). Specifically, "*reliance on* the terms and effect of *a document in drafting the complaint* is *a necessary prerequisite* to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d. at 153 (emphasis added). If the court elects to consider extrinsic documents that are outside the pleadings, it is "*obligated* to convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery …" *Id.* (emphasis added). Golden Hill's amended complaint does not incorporate or in any way make reference to the BIA process governing its own acknowledgment petition or the acknowledgment petitions of any other parties; thus, it is not an integral matter to its complaint. And yet, the State asks the court to rely on such documents for purposes of its motion, thus conceding its improper reliance on matters outside of the pleadings. See State's Memorandum, p. 1.

Moreover, the State has overstated the significance of the case law regarding the documents of which a court may take judicial notice. See State's Memorandum, pp. 6-7. In each of the cases cited by the State, the courts were considering generic information, not specific information regarding, for instance, particular parcels of land, which the State is asking the court to do in the present matter. See, *e.g.*, *Tucker v. Outwater*, 118 F.3d 930 (2nd Cir.) (court took judicial notice of the location of two towns); *Central Green, Co. v. United States*,

7

531 U.S. 425 (2001) (judicial notice taken subject to the right of the plaintiff to challenge <u>on remand</u>, something which is not available to Golden Hill in this case); *Farmland Preservation Ass'n v. Goldschmidt*, 611 F.2d 233 (8th Cir. 1979) (in the context of approvals regarding highways, the court took judicial notice generally of the nature of the farmland involved, not of the specific parcels involved.)

Despite the fact that it has only admitted part of the BIA factual record, the State asks the Court to make a factual finding that the BIA process was fair and complete, a claim that Golden Hill strongly disputes. In fact, an evidentiary hearing would demonstrate that Attorney General Richard Blumenthal has previously, on numerous occasions, contended that the BIA process is fundamentally flawed and susceptible to the improper influence of money and politics. See, *e.g.*, <u>Connecticut Attorney General's Press Releases dated July 6, 2000, July 21, 2000 and September 12, 2002</u> and <u>The Advocate Stamford, "*Blumenthal: State Opposition to Casinos Growing*" dated November 1, 2002</u>. On a motion for judgment, the court must take the allegations *as pled in the complaint* as true and draw all inferences in favor of the non-moving party. See *Irish Lesbian & Gay Org.*, *supra*. As noted by the Second Circuit, Golden Hill has "pled in each of its three complaints all of the elements on a Nonintercourse Act claim… Such allegations satisfy the minimum constitutional requirements for standing." *Golden Hill*, 39 F.3d. at 58. Golden Hill also met the "court-imposed prudential limits to invoking the jurisidiction of the Federal Courts." *Id.*

8

It is not only in its stance with respect to the BIA that the State has taken inconsistent and contradictory positions. Given the State's statutory recognition of Golden Hill as an indigenous Indian tribe pursuant to Connecticut General Statute §47-59a, *et seq.*, it is disingenuous for the State to now claim that Golden Hill is not a tribe. The court's decision in *New York v. Shinnecock Indian Nation*, 400 F.Supp.2d 486 (E.D.N.Y. 2005) underscores the impropriety of a state denying the existence of a tribe that it has statutorily recognized. In *Shinnecock*, the court stated that the arguments advanced by the State of New York and the Town of Southampton that the Shinnecock's were not an Indian tribe because they had not been recognized as such by the BIA were "blatantly inconsistent (to say the least)" given New York's statutory recognition. *Id.* at 488-89. Connecticut General Statute §47-59a provides "[t] he State of Connecticut further recognizes that the indigenous tribes [including], …the Golden Hill Paugussett are <u>self-governing entities possessing powers and duties over tribal members and reservations</u>." Conn. Gen. Stat. §47-59a(b) (2006) (emphasis added). The State of Connecticut also established an Indian Affairs Council, of which Golden Hill is a representative, pursuant to Connecticut General Statute §47-59b(a). In fact, the State of Connecticut holds two reservations of Golden Hill in trust pursuant to Connecticut General Statute §47-60. As such, it is the State that should be collaterally estopped from claiming that Golden Hill is not a tribe given its own statutory recognition of it as an indigenous Indian tribe. The State argues that its recognition of Golden Hill as a tribe is not probative of tribal status

9

under federal law. However, in land claim actions based on the Non-Intercourse Act, courts apply the *Montoya* test for determining tribal status. See *Montoya v. United States*, 180 U.S. 261, 266 (1901); *United States v. Candelaria*, 271 U.S. 432, 441-42 (1926). As such, this court must look at the *Montoya* factors, just as the *Shinnecock* court did when it determined that the State of New York's recognition in that context was significant. *Shinnecoc*k, 400 F.Supp.2d at 488-89. Golden Hill is not required to have federal recognition in order to litigate its land claims in court. A factual hearing would reveal that the State of Connecticut has continuously recognized Golden Hill as an Indian tribe, and that through the aforementioned statutory scheme, it has had a trust relationship with Golden Hill, initially through the appointment of overseers and later by designating state agencies to assume trust obligations as to Golden Hill. See also State's Memorandum, Exhibit A, Final Determination Against Federal Acknowledgment of the Golden Hill Paugussett Tribe (June 14, 2004) (pp.12-13). Presently, the Department of Environmental Protection is the entity responsible for holding the land in trust.

    The State's reliance on *Shinnecock*, *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F. Supp. 266 (N.Y. 2005),[5] or *City of Sherrill, N.Y. v. Oneida Indian Nation of New York, et al*, 544 U.S. 197, 125 S.Ct. 1478 (U.S. 2005) in support of its Motion for Judgment on the

---

[5] In addressing the *Cayuga* majority and its reliance on *Sherrill*, Judge Hall in her dissent argues that the defense of laches does not bars all remedies, including those for money damages. 413 F. Supp. at 280. Golden Hill agrees with Judge Hall on this issue.

Pleadings is untimely. It is most noteworthy that in none of theses cases was the court addressing these issues just on the pleadings, as it is being asked to do in the present matter. In *Cayuga*, the Second Circuit made express reference to and relied on specific factual findings made by the District Court in the liability phase of the case and not just on the pleadings. 413 F. Supp. at 268-273. This underscores the fact that the issues presented by the Amended Complaint are not appropriate for a judgment on the pleadings. As such, the Defendants' motions should be denied, in that the issues raised are premature.

### C. <u>This Court Should Not Defer to and Accept as Conclusive the BIA's Findings.</u>

The Second Circuit held that Golden Hill's "claim is not cognizable in the first instance solely by the BIA. In fact, the BIA lacks the authority to determine the plaintiff's land claim. Regardless of whether the BIA were to acknowledge Golden Hill as a tribe for purposes of federal benefits, Golden Hill must still turn to the district court for an ultimate judicial determination of its claim under the Nonintercourse Act." *Golden Hill*, 39 F.3d at 58. The Second Circuit noted that the administrative action and the court's ultimate decision on the Non-Intercourse Act claims "… might not always yield identical results" and rejected the District Court's position that that a favorable ruling from the BIA was the price of entry to the court, instead holding that the BIA role was to gather and marshal facts as an aid to the court.

11

*Id.* "We note that tribal status for purposes of obtaining federal benefits is not necessarily the same as tribal status under the Nonintercourse Act." *Id.* at 57. Of significance for analyzing the validity of Golden Hill's land claims under the Non-Intercourse Act and its tribal status under *Montoya* is the State of Connecticut's <u>consistent</u> recognition of Golden Hill as an indigenous tribe that is a "self-governing entit[y] possessing powers and duties over tribal members and reservations." Conn. Gen. Stat. §47-59a (2006); see, also *Shinnecock*, supra.

As noted earlier herein, the BIA is not integral to or in any way incorporated into Golden Hill's amended complaint; as such, consideration of its findings is not proper for purposes of the State's motion for judgment on the pleadings. See *Sira*, supra, and *Chambers*, supra. Nonetheless, ultimately in determining whether to accept the BIA's findings, the inquiry should focus on whether the administrative proceedings were sufficiently judicial in nature and adhere to the equitable standards of a court proceeding. Despite the State's characterization of the process as unflawed, the BIA proceedings relating to Golden Hill were patently unfair and faulty. It is noteworthy that the process took over ten years, and included internal reversals and reconsiderations. See State's Memorandum, Exhibit E, Summary Under the Criteria for the Proposed Finding on the Golden Hill Paugussett Tribe (Jan. 29, 2003) (pp. 2-5). Golden Hill flagged the following examples of prejudicial conduct that affected the BIA's ultimate decision:

12

1. The BIA, in making [its] determination, used materials not contained in the record;
2. The BIA used evidentiary standards for this petition inconsistent with the standards used for other petitions;
3. The BIA either through ignorance or intent, wrongfully construed evidence against the Tribe;
4. The BIA rendered the Proposed Finding dated January 21, 2003 and the Final Determination dated June 14, 2004, without notifying the Tribe that material against this Tribe had been submitted in another petition;
5. The BIA held ex-parte meetings with adverse "interested parties," as that term is defined in 25 CFR §83.1;
6. The BIA held ex-parte meetings with members of the Connecticut Congressional delegation, all of whom have expressed publicly and worked actively for the denial of he Tribe's Federal Recognition;
7. The BIA failed to notify the Tribe and failed to take appropriate action when Congressman Christopher Shays met privately with staff members of the BIA and intimidated them with the intended result being the denial of the Tribe's petition by the BIA;
8. The decision in the second Final Determination was made by the Deputy Assistant Secretary for Indian Affairs, who was not authorized by Congress to render such decisions;
9. The BIA leaked material to adverse interested parties;
10. Former BIA staff members went to work for adverse interested parties;
11. The Tribe had been previously recognized by the United States, but such recognition was ignored by the BIA.

State's Memorandum, Exhibit B, *In re Federal Acknowledgement of the Golden Hill Paugussett Tribe*, 40 IBIA 126 (Oct. 18, 2004) (pp. 5-6).

See, also Brief in Support of Golden Hill Paugussett Tribe's Request to the IBIA for Reconsideration, pp. 92-93; September 2004 (noting a February 2002 article in the Connecticut Post regarding Congressman Christopher Shays' bullying tactics with the BIA.) The Interior Board of Indian Appeals ("IBIA") noted that "[t]hese allegations evince disagreement with the

BIA's analysis of the evidence,…or charge that there were procedural irregularities or due process violations;" however, it did not conduct any investigation because "allegations of this type…do not fall within the Board's jurisdiction." *Id.* at p. 6. Instead, the IBIA referred consideration of these allegations to the Secretary of the Interior, who dealt with them dismissively in a one-page letter. *Id.* at p. 6; State's Memorandum, Exhibit C, Letter Ruling of Secretary of the Interior Gale A. Norton (Mar. 18, 2005). Thus, neither the IBIA nor the Secretary of the Interior truly addressed Golden Hill's complaints and concerns. The State's own exhibits reflect the weakness and inherent deficiencies of the BIA process. In addition, it is not only Golden Hill who has questioned the integrity of the BIA process. In addition to Attorney General Blumenthal, at least two governmental inquiries in recent years have focused directly or indirectly on influence peddling and its impact on the review of tribal petitions. At the appropriate time, Golden Hill would intend to introduce evidence of these inquiries and their concerns and findings. See, *e.g.*, Final Report of the Independent Counsel in Re: Bruce Edward Babbit, United States Court of Appeals for the District of Columbia Circuit, Carol Elder Bruce, Independent Counsel, August 22, 2000 and "Gimme Five" - Investigation of Tribal Lobbying Matters, Final Report, Senate Committee on Indian Affairs, One Hundred and Ninth Congress, June 22, 2006.

      Moreover, the Second Circuit specifically stated that "the BIA lacks the authority to

14

determine the plaintiff's land claim." *Golden Hill*, *supra*, at 58.  "A federal court, of course, retains the final authority to rule on a federal statute …." *Id.* at 60.  Congress could have amended the Non-Intercourse Act to allow the BIA to make such determinations regarding land claims, but it has chosen not to delegate this responsibility to the BIA. "The formulation of this standard [the *Montoya* standard for land claims] and its use by the federal courts occurred after Congress delegated to the executive branch the power to prescribe regulations for carrying into effect statutes relating to Indian affairs, *see* 25 U.S.C. sec. 9, and without regard to whether or not the particular group of Indians at issue had been recognized by the Department of the Interior." *Golden Hill*, 39 F.3d. at 59.  Thus, Congress could have easily chosen to give jurisdiction to the Department of Interior to decide land claims, but has notably refrained from doing so.  This undercuts the argument that the court should just mindlessly defer to the BIA.

      A finding of an agency's primary jurisdiction does not deprive the court of review jurisdiction.  *See Federal Maritime Board v. Isbrandtsen Company, Inc.*, 356 U.S 498, 78 S.Ct. 851, 861-62 (1958) (noting that a holding that an agency "had primary jurisdiction, in short, was *a device to prepare the way*, if the litigation should take its ultimate course, *for a more informed and precise determination by the Court* of the scope and meaning of the statute as applied to those particular circumstances.  To have held otherwise would, necessarily, involve the Court in comparatively abstract exposition.")(emphasis added).  Thus, a court looks to see what the jurisdiction is of the administrative agency in question and tends to defer if the

15

decision was within its jurisdiction. Since the BIA has does not have jurisdiction for determining land claims under the Non-Intercourse Act, it is appropriate for this court to conduct its own "informed and precise determination." *Id.* The courts have dealt with land claims on numerous occasions, and Golden Hill is entitled to offer evidence and litigate its claims in court. *See United States v. Yale New Hosp.*, *supra.*

### D. **Golden Hill's Claims are Not Barred by the State's Affirmative Defenses**

All of the foregoing arguments also apply to the State's argument that Golden Hill's claims are barred by its affirmative defenses, including laches, inequitable delay and acquiescence. As noted above, the State's argument requires this court to make specific factual determinations from outside of the pleadings, which is improper and far afield from the scope of a motion for judgment.

### III. **CONCLUSION**.

Based upon the foregoing reasons, the Plaintiff, Golden Hill Paugussett Tribe of Indians, respectfully requests that the Court deny the Defendants' Motion for Judgment on the Pleadings.

        THE PLAINTIFF,

        By: /s/ Michael D. O'Connell
        Michael D. O'Connell
        O'Connell, Flaherty & Attmore, LLC
        280 Trumbull Street
        Hartford, CT  06103
        Federal Bar. No. CT05299
        (860) 548-1300
        (860) 548-0023  (facsimile)
        mailto:moconnell@ofalaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 5th day of September 2006, the foregoing Memorandum in Opposition to Motion for Judgment on the Pleadings was filed with the Court electronically and served by regular first class mail, postage prepaid, upon anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of

the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                            /s/ Michael D. O'Connell
                                            Michael D. O'Connell, Esq.