UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN HILL PAUGUSSETT TRIBE OF INDIANS, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil No. 2:92CV0738(JBA) |
| | : | CONSOLIDATED |
| | : | |
| M. JODI RELL, GOVERNOR OF THE STATE OF CONNECTICUT, ET AL., | : | |
| *States*. | : | SEPTEMBER 13, 2006 |

**REPLY IN SUPPORT OF MOTION FOR JUDGMENT
ON THE PLEADINGS OF STATE GOVERNOR
OF THE STATE OF CONNECTICUT**

DEFENDANT,
M. JODI RELL,
GOVERNOR OF THE STATE OF
CONNECTICUT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Mark F. Kohler (#ct 02272)
Assistant Attorney General
Susan Quinn Cobb (#ct 03850)
Assistant Attorney General
Office of the Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
(860)808-5270
(860)808-5385(fax)
mark.kohler@po.state.ct.us
susan.cobb@po.state.ct.us

Pursuant to Local Rule 7(d), the defendant Governor of the State of Connecticut ("State") submits this reply brief in response to the memorandum of opposition of the plaintiff Golden Hill Paugussett ("GHP") and in support of the State's motion for judgment on the pleadings. The GHP's principal arguments in opposition to the State's motion are not as to the merits of the issues raised, but rather that the issues cannot be decided on the basis of the pleadings and that the GHP is entitled to discovery before the Court may resolve the issues. Both objections are plainly wrong and unsupported by the law. The issues raised are properly presented and are squarely ready for the Court's resolution.

Indeed, what is most striking about the GHP's opposition is the number of central issues that it does not contest and therefore concedes. For example, it does not challenge any of the following key contentions of the State:

- The GHP does not challenge the State's description of the relevant standards governing tribal status. State Mem., at 8.

- It does not contest that the factual inquiry for both tribal status under the Non-intercourse Act and federal acknowledgment are substantively the same. *Id.* at 9-10.

- It does not contest the conclusion that, when applying the *Montoya* standard to the BIA's findings, the GHP lacks tribal status. *Id.* at 26-29.

- It does not contest the State's statement of the relevant facts under the *Sherrill-Cayuga* standard or the conclusion that, upon applying that standard to those facts, the GHP's claims are barred by the doctrines of laches, acquiescence and impossibility. *Id.* at 34-37.

In light of these remarkable concessions and the lack of merit as to the GHP's procedural objections, the State's motion for judgment on the pleadings should be granted.

## I.   THE ISSUES PRESENTED BY THE STATE'S MOTION ARE APPROPRIATE AND READY FOR RESOLUTION ON THE PLEADINGS.

The GHP's principal argument in opposition to the State's motion is that a motion for judgment on the pleadings is not a proper procedural vehicle for resolution of the issues

because the State relies on matters outside of the pleadings. GHP Mem., at 6-7. Although a court is restricted in what it may consider in ruling on a motion for judgment on the pleadings, *see* Fed. R. Civ. P. 12(c), the GHP misstates what those restrictions are. Viewed properly under the relevant standards for motions for judgment on the pleadings, it is clear that the issues raised are appropriately presented and may be resolved without further litigation.

Specifically, the GHP argues that the State has improperly referenced certain judicially noticeable documents and facts that are outside the record. Such material, the GHP contends, can only be taken into consideration on a motion for judgment on the pleadings if they are attached, referenced or integral to the complaint. This is entirely specious. Reliance on documents that are deemed to be part of a complaint because they are attached or referenced by the complaint is but one way in which matters outside of the pleadings may be considered. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). It has long been established that courts may consider matters that are subject to judicial notice for purposes of motions under either Rule 12(b)(6) or Rule 12(c). *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Lawrence v. The Richman Group of Conn., LLC,* 407 F. Supp. 2d 385, 389 n.6 (D. Conn. 2005); 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 3D § 1371, at 276; *see Greco v. Trauner, Cohen & Thomas, LLP,* 412 F.3d 360, 363 (2d Cir. 2005) (standards under Rule 12(b)(6) and 12(c) are the same).

The GHP is simply wrong to assert that merely because the relevant administrative decisions are not referenced in or attached to its complaint that it cannot be considered for purposes of the State's motion.[1] It is without question that the Court may take judicial notice of

---

[1] The issue of judicial notice of the nature of the land at stake is addressed in section III below.

2

agency decisions such as the BIA's final determination rejecting the GHP's federal acknowledgment petition. *Kavowras v. New York Times Co.,* 328 F.3d 50, 57 (2d Cir. 2003). After all, there is no question that the document attached as Exhibit A to the State's motion is the BIA's decision and that it includes all of the BIA's findings and conclusions. Thus, there is no procedural barrier to the State's reliance on and the Court's consideration of the BIA's findings or any other administrative decision cited by the State.

Even if the Court were to conclude that these are matters outside of the pleadings that cannot be relied on for a Rule 12(c) motion, the State's motion should not be denied, but rather the Court should simply convert the motion to one for summary judgment. Fed. R. Civ. P. 12(c); *see Sira v. Morton*, 380 F.3d 57, 67-68 (2d Cir. 2004). If the Court were to convert the motion, it is amply apparent that under the applicable law there are no ***material*** facts that could be subject to genuine dispute.[2] For the very reasons that the State is entitled to judgment on the pleadings – that the Court must defer to the BIA's findings and that those findings demonstrate that the GHP cannot possibly satisfy the requirements for tribal status – it would similarly be entitled to summary judgment.[3] Moreover, as discussed below, if the motion is converted to one for summary judgment, the GHP is not entitled, as it appears to presume, to discovery.

---

[2] In a footnote, the GHP asserts, without offering even a single piece of evidentiary support, that if the motion were converted to one for summary judgment, "the full BIA record would be put before the court and it would be obvious that there is a genuine issue of material fact as to whether [GHP] is a tribe for purposes of federal recognition." GHP Mem., at 6 n.4. The GHP must do more than make this wholly unsupported assertion to defeat the State's motion. Remarkably, it does not even attempt to identify what those genuine issues of material fact would be or what materials in the BIA record would make such issues so "obvious." In the absence of doing so, the Court must conclude that there are no such issues.

[3] If the Court decides it must convert the motion, the State requests the opportunity to submit supplemental briefing to articulate more fully the lack of any genuine issue of material fact and its entitlement to a summary judgment of dismissal.

3

Instead, the Court should proceed directly to decide the motion, whether as one on the pleadings or for summary judgment.

II. **CONSISTENT WITH THE SECOND CIRCUIT'S DECISION ON THE APPLICATION OF THE PRIMARY JURISDICTION DOCTRINE, THIS COURT MUST DEFER TO THE BIA'S FINDINGS.**

The GHP misconceives the nature of the exercise under primary jurisdiction as articulated by the Second Circuit in *GHP v. Weicker,* 39 F.3d 51 (2d Cir. 1994). The argument at this juncture is not that federal tribal acknowledgment by the BIA is a prerequisite to tribal status under the Nonintercourse Act. *See* GHP Mem., at 14-15. Rather, it is that the Court must defer to the findings made by the BIA in denying federal acknowledgment to the GHP and apply the relevant standards for tribal status under the Nonintercourse Act to those findings.[4] Despite the efforts of the GHP to twist the language of the Second Circuit's decision into some kind of prohibition against deferring to the BIA's findings, *see id*., at 10, 15, there simply is no valid reason why the Court should not defer to these findings. This does not mean that the Court is "mindlessly" deferring to the BIA. GHP Mem., at 15. Instead, the Court is simply acting consistent with the requirements of the primary jurisdiction doctrine and the Second Circuit's decision.

A. **The GHP May Not Collaterally Attack the BIA's Findings in This Litigation, and It Is Not Entitled to Discovery as to the BIA's Proceedings.**

The GHP asserts that the Court should not defer to the BIA's findings because, if permitted to conduct discovery and proceed to trial, it would be able to show that the BIA's proceedings on its petition for tribal acknowledgment were unfair. GHP Mem., at 12-14. The

---

[4] The defendant United States goes one step further. It argues that "once the Department of Interior has ruled that a group is not an Indian tribe, the court should defer to that determination," and no application of the *Montoya* standard is necessary. United States' Mem., at 19 & n.6 (Doc. #359).

4

argument fails for two simple reasons: First, the GHP may not collaterally attack the BIA's findings in this action. The proper place for such claims would be in the context of judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. The GHP has opted not to pursue an appeal under the APA in which such claims could be reviewed under the appropriate standards of review prescribed by the APA. Second, the GHP has utterly failed to make the requisite showing that it is entitled to the discovery it claims it needs to "flesh out its concerns with the nature of the BIA process and its failings." GHP Mem., at 6 n.4.

As demonstrated in the State's main brief, State Mem., at 21-22, the GHP may not use this litigation to collaterally attack the BIA's findings.[5] The GHP does not directly contest this and offers no case law that would support its ability to make a collateral attack. Instead, it appears merely to assume that it may do so. GHP Mem., at 4 n.6, 12-14. The BIA's decisions on federal acknowledgment are subject to APA review, and judicial review of such agency decisions is circumscribed by the APA's limitations on such review. *See* 5 U.S.C. § 706; *Miami Nation of Indiana, Inc. v. U.S. Dept. of Interior*, 255 F.3d 342, 348-49 (7th Cir. 2001), *cert. denied,* 534 U.S. 1129 (2002); *Waterkeeper Alliance, Inc. v. EPA*, 399 F.3d 456, 489 (2d Cir. 2005). The GHP complains that its claims of procedural defects were not properly addressed by the Interior Board of Indian Appeals or the Secretary of the Interior. GHP Mem., at 13-14. The remedy for that allegation, however, is an APA appeal. Having made the choice not to seek that remedy, the GHP cannot collaterally attack the BIA's findings free of the APA's limitations on judicial review. *See Ricci v. Chicago Mercantile Exchange*, 409 U.S.

---

[5] The Second Circuit's recent decision in *Ellis v. Tribune Television Co.*, 443 F.3d 71 (2d Cir. 2006), is illustrative. In that case, the court of appeals held that the district court should have invoked primary jurisdiction on an issue that was pending before the Federal Communications Commission ("FCC"), which subsequently rendered a decision contrary to that of the district court. Rather than remand the matter for reconsideration in light of the FCC's decision, the court of appeals simply directed entry of judgment based on the FCC's decision. *Id.* at 92-93.

5

289, 305-06 (1973); *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic No. 99*, 400 U.S. 62, 72 (1970); *Association of Int'l Automobile Mfrs., Inc. v. Commissioner*, 196 F.3d 302, 304 (1st Cir. 1999); *MCI Telecoms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1103 (3d Cir. 1995).

Moreover, even assuming that the GHP could collaterally attack the BIA's findings, which it cannot, it is by no means entitled to discovery. Again, the GHP offers no case law and makes no showing that it is entitled to discovery as to its claims of the fairness and propriety of the BIA's proceedings. First, any such request for discovery is untimely. Well over a year has passed since this case was restored to the Court's active docket, and yet the GHP has made no formal request to pursue the discovery that it argues is so essential to its claims.[6] The GHP's claims of procedural defects are not new; it made these same allegations two years ago to the agency below. GHP Mem., at 13. It has no justification for failing to proceed diligently as to any such discovery, and the Court, on that ground alone, should preclude it.

In any event, extra-record discovery relating to an administrative action is only permitted in the most extraordinary of circumstances and only upon a "strong showing" of bad faith or improper conduct justifying the discovery. *National Audobon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997); *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998). It is easy to lob unsubstantiated allegations of unfairness and procedural impropriety. That, however, is not enough to entitle a party to discovery. The GHP has made no showing, beyond offering up a list of completely unsupported allegations, GHP Mem., at 13, that the BIA's findings were the product of bad faith or improper conduct. It simply is not entitled to such discovery on the basis of such unsubstantiated allegations; rather, it must make

---

[6] The GHP seems to suggest that the lapse of time is somehow the defendants' fault. GHP Mem., at 4. This is not the defendants' case to prosecute.

a strong showing of bad faith or improper conduct. *Id.* If discovery were permitted without having made such a showing, it would put the GHP in the paradoxical position of being able to do in a collateral attack what it could not do in a direct APA appeal. In short, there is no reason for the Court not to proceed directly to resolving the issues on the pleadings.

    **B.**     **The GHP Fails to Demonstrate How State Recognition Precludes Deference to the BIA's Findings.**

The GHP rely on *New York v. Shinnecock Indian Nation*, 400 F. Supp. 2d 486 (E.D.N.Y. 2005), for the proposition that, because in 1973 Connecticut enacted a statute that recognized the Golden Hill Paugussett as a "self-governing entit[y] possessing powers and duties over tribal membership and reservations," Conn. Gen. Stat. § 47-59a, the Court may not defer to the BIA's findings and that the State is somehow collaterally estopped from challenging the GHP's *federal* tribal status. GHP Mem., at 9-10, 12. The State has fully addressed the *Shinnecock* decision, its inapplicability to this case, and its lack of persuasive authority in its main brief. *See* State Mem., at 27-29.

The GHP's argument relating to state recognition suffers from a fundamental flaw. The argument assumes something that the GHP does not even attempt to argue: That state recognition and federal tribal status are substantively the same. *See Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 146-47 (2d Cir. 2005) (estoppel requires identical issues). It offers no case law, of which there is none, that suggests that federal and state tribal recognition have the same purpose or the same or similar standards, which they do not. Most importantly, the GHP fails to demonstrate that state recognition is based on a continuing existence of a community with a political leadership, both of which are touchstones to federal acknowledgment and tribal status under the Nonintercourse Act. *See* State Mem., at 9-13. Certainly, there is no legal basis for the proposition that, merely because a group is recognized

by a state, this group is "a body of Indians of the same or similar race, united in a community under one leadership or government, and inhabiting a particular, though sometimes ill-defined territory." *Montoya v. United States*, 180 U.S. 261, 266 (1901). If that were the case, then the Second Circuit's invocation of primary jurisdiction in this case was a meaningless exercise.

The GHP made its simplistic argument to the BIA, which rejected it. As the BIA found in detailed analyses, the State's historical relationship with the GHP was inconsistent and ambiguous at best, and the State's interactions with the GHP over the last two centuries have been limited to sporadic contacts with individuals and not with a broader tribal community or with any recognized leadership. Ex. A to State Mem., at 12-17; Ex. E to State Mem. at App. A1-A4. Thus, state recognition offers no evidence that the GHP has existed continuously as a community with political leadership.[7] *Id.*

In the end, the GHP's argument that the Court ought not to defer to the BIA's findings because of state recognition amounts to little more than its disagreement with the BIA's findings on the issue. That is not a basis to reject the deference mandated by the doctrine of primary jurisdiction and the Second Circuit's directive.

### III. IN LIGHT OF THE GHP'S FAILURE TO CONTEST THE STATE'S BASIS FOR A JUDGMENT OF DISMISSAL ON THE GROUNDS OF LACHES, ACQUIESCENCE AND IMPOSSIBILITY, THE COURT SHOULD GRANT JUDGMENT ON THESE DEFENSES IN THE STATE'S FAVOR.

The GHP argues that the State's motion as to the defenses of laches, acquiescence and impossibility is "premature." GHP Mem., at 11. It contends that the Court can only make

---

[7] As discussed in the State's main brief, subsequent decisions of the Interior Board of Indian Appeals further articulated why state recognition, in and of itself, is not evidence of continuous existence of a community with political leadership. *See* State Mem., at 28. The GHP contends that the State somehow improperly brought these decisions to the Court's attention because they have "nothing to do with the [GHP's] land dispute." GHP Mem., at 6. Obviously, those decisions are precedents that have everything to do with state recognition, and the GHP has put that issue squarely before the Court.

8

certain unspecified findings after trial. *Id.* at 10-11, 16. This argument borders on the frivolous.

First, the GHP makes no effort to identify what findings the Court must make that it cannot make on the basis of the pleadings or by judicial notice. Even more remarkably, the GHP makes no effort to controvert the State's contentions as to what the facts are based on the pleadings and judicial notice. Indeed, as demonstrated in the State's main brief, all of the relevant facts under the standards articulated in *City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197 (2005), and *Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266 (2d Cir. 2005), *cert. denied*, 126 S.Ct. 2021, 2022 (2006), are readily determined on the basis of the pleadings or are judicially noticeable. State Mem., at 35-37. Specifically, the passage of generations, the longstanding non-Indian character of the area, the residence elsewhere of the group, and the long delay in initiating this action all are established by the GHP's own pleadings. *Id.* The GHP offers no response to this and thus concedes the issue.

The only fact that requires judicial notice for purposes of the *Sherrill-Cayuga* analysis is the development of the land and its present-day characteristics. *Id.* at 36. The GHP argues that the State has "overstated" the significance of the case law on judicial notice of the status of land. GHP Mem., at 7-8. This is absurd. What the Court is being asked to take judicial notice of is something that tens of thousands of people observe every day and requires little more than a drive along Route 8/25 or down a street in downtown Bridgeport: The land in question is highly developed and has been so for many generations. No specific or unique findings need be made about any particular plot of land. This is precisely the kind of everyday, common fact of which courts routinely take judicial notice. *See, e.g., Western Mohegan Tribe & Nation v.*

9

*Orange County*, 395 F.3d 18, 22 n.3 (2d Cir. 2004); *Tucker v. Outwater*, 118 F.3d 930, 935 (2d Cir.), *cert. denied*, 522 U.S. 997 (1997).

      Moreover, the GHP again offers absolutely no argument or evidence to controvert this plainly incontrovertible fact itself.  It does not even hint at what it believes it would be able to prove at trial that could possibly alter this or any of the other relevant facts.  Instead, the GHP merely asserts that because the lower courts in *Sherrill* and *Cayuga* made findings about the land at stake in those cases after a hearing or trial, this Court must do the same.  Although the courts in *Sherrill* and *Cayuga* conducted hearings or trials, it hardly follows that this Court must do the same here.  After all, the litigation in the trial courts in those cases proceeded without the benefit of the law as subsequently declared by the U.S. Supreme Court and the Second Circuit in those cases.  This Court is thus in a far different posture in terms of the legal developments relating to the issues.  Because the relevant facts in this case may readily be determined on the basis of the pleadings or by judicial notice, there is simply no need for a hearing or trial as to those facts.

      In any event, the GHP's unsupported plea for further proceedings is grossly insufficient.  It does not and cannot challenge the incontrovertible.  Dismissal on the basis of the defenses of laches, acquiescence and impossibility should be entered without any further proceedings.

### IV.   CONCLUSION

      For the foregoing reasons and the reasons set forth in the State's main brief, the State's motion for judgment on the pleadings should be granted, and the plaintiff's amended complaint should be dismissed.

11

        DEFENDANT,
        M. JODI RELL,
        GOVERNOR OF THE STATE OF
        CONNECTICUT


        /s/_Richard Blumenthal
        Richard Blumenthal (#ct05924)
        Attorney General
        Mark F. Kohler (#ct 02272)
        Assistant Attorney General
        Susan Quinn Cobb (#ct 03850)
        Assistant Attorney General
        Office of the Attorney General
        55 Elm Street, P.O. Box 120
        Hartford, CT 06141-0120
        (860)808-5270
        (860)808-5385(fax)
        mark.kohler@po.state.ct.us
        susan.cobb@po.state.ct.us

## CERTIFICATION

      This certifies that a copy of the foregoing Reply Memorandum in Support of Motion for Judgment on the Pleadings was electronically filed on this 13th day of September, 2006, with notice of this filing served by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF System.

      /s/ Mark F. Kohler_____
      Mark F. Kohler (#ct 02272)
      Assistant Attorney General
      Office of the Attorney General
      55 Elm Street, P.O. Box 120
      Hartford, CT 06141-0120
      (860)808-5270
      (860)808-5385(fax)
      mark.kohler@po.state.ct.us