# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Golden Hill Paugussett Tribe of Indians, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No, 2:92cv738 (JBA) |
| | : | <u>LEAD</u> |
| M. Jodie Rell, Governor of the State of Connecticut, et al., | : | |
| Defendants. | : | |

### RULING ON PENDING MOTIONS FOR JUDGMENT ON THE PLEADINGS
### [DOCS. ## 330, 333, 334, 335, 339, 342, 346, 347, 350, 357, 362, 364, 381]

This case is the consolidated action composed of three separate land actions brought by plaintiff, Golden Hill Paugussett Tribe of Indians ("Golden Hill"), against various individuals, corporations, and the State of Connecticut. Plaintiff seeks to "restore the Golden Hill Paugussett Tribe of Indians to possession of certain aboriginal and reservation lands in Bridgeport, Connecticut, which lands are subject to the Indian Non-Intercourse Act, 25 U.S.C. § 177, and which lands were taken in violation of the common law." Am. Compl. [Doc. # 325] ¶ 1. Plaintiff also seeks money damages stemming from the alleged denial of the use and enjoyment of any rental income and profits due to it from the land and the fair market value thereof.[1]  <u>Id</u>. ¶¶ 161, 162.

---

[1] The claims originally brought under the Proclamation of 1763 were previously dismissed by this Court.  <u>See</u> Pl. Opp. [Doc. # 370] at 3 n.3.

1

Pursuant to order of the Second Circuit, <u>Golden Hill Paugussett Tribe of Indians v. Weicker</u>, 39 F.3d 51 (2d Cir. 1994), this case was stayed pursuant to the doctrine of primary jurisdiction pending resolution by the Bureau of Indian Affairs (the "BIA") of Golden Hill's petition for federal tribal acknowledgment.  The BIA's proceedings concluded with the rejection of Golden Hill's petition and defendants now move pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings, contending that the Court should defer and/or give preclusive effect to various factual determinations made by the BIA, which would preclude Golden Hill from satisfying the elements of its Nonintercourse Act claim, or, alternatively, for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) based on the equitable doctrines of laches, long acquiescence, and impossibility. <u>See</u> [Docs. ## 330, 333, 334, 335, 339, 342, 346, 347, 350, 357, 362, 364, 381].[2]

For the reasons that follow, defendants' Rule 12(c) motions will be granted.

## I.    Factual and Procedural Background

Golden Hill alleges that it "is an Indian Tribe which has

---

[2] While the majority of defendants have filed motions joining the State's briefing of the issues, defendants United Illuminating Company and Southern Connecticut Gas Company, defendants Joseph E. Shapiro and Marjorie Shapiro, and defendant Hoffman Fuel Company have filed their own briefing.  <u>See</u> [Docs. ## 363, 365, 376].

resided in the State of Connecticut since time immemorial.  The
Tribe is recognized by the State of Connecticut and has two
reservations in the State of Connecticut located in Trumbull and
Colchester."  Am. Compl. ¶ 4.  Plaintiff claims that "[s]ince
time immemorial, and until the acts complained of [in this
action], the Tribe exclusively owned, used, and occupied lands in
what is now known as the City of Bridgeport, Connecticut,
including the lands which are the subject of this litigation."
Id. ¶ 12.

    Plaintiff alleges a series of illegal encroachments by which
the Tribe was divested of portions of its property.  Id. ¶¶ 15-
25.  As articulated by plaintiff, "[t]he Non-Intercourse Act
confirmed the rights of Indian Tribes to the possession of all
lands then owned or occupied by them, until alienated with the
consent of the Congress, and nullified any purported conveyance
of tribal lands made without such federal consent."  Id. ¶ 22.
Plaintiff alleges that "[t]he government of the United States has
never consented to or approved of the said enactment of the
General Assembly of the State of Connecticut or the Assembly of
the Colony of Connecticut [purporting to alienate certain alleged
tribal property], or the acts of any other persons, or any
conveyance or alienation pursuant thereto, and the said acts,
enactments, and conveyances are void; nor has the title and right
of possession of the Tribe to the said land been transferred to

any defendant or to any other party with the consent of . . . or
approval of the Government of the United States.  The Tribe
therefore retains the title and right of possession to the said
land and the said land is not and never has been the property of
any other person, party or entity." Id. ¶ 26.  Plaintiff
accordingly seeks a declaration that it is "the owner of and
[has] the legal and equitable title and right of possession to
such land, and restor[ation] to immediate possession," as well
as, inter alia, money damages representing the fair market value
of the land and the fair rental value and profits of the land for
the period of dispossession.  Id. at 45 (prayer for relief).

    In order "[t]o establish a prima facie case based on a
violation of the [Nonintercourse] Act, a plaintiff must show that
(1) it is an Indian tribe, (2) the land is tribal land, (3) the
United States has never consented to or approved the alienation
of this tribal land, and (4) the trust relationship between the
United States and the tribe has not been terminated or
abandoned." Golden Hill, 39 F.3d at 56.  "Federal courts have
held that to prove tribal status under the Nonintercourse Act, an
Indian group must show that it is 'a body of Indians of the same
or a similar race, united in a community under one leadership or
government, and inhabiting a particular though sometimes ill-
defined territory." Id. at 59 (citing United States v.
Candelaria, 271 U.S. 432, 442 (1926); Montoya v. United States,

4

180 U.S. 261, 266 (1901)).

In 1992 to 1993, after plaintiff filed an amended complaint and the parties briefed motions to dismiss, this Court (by opinion of Hon. Peter C. Dorsey) dismissed plaintiff's Nonintercourse Act claim, finding that Golden Hill had failed to exhaust administrative procedures for tribal recognition prior to seeking a judicial determination of tribal status, and exercised its discretion to defer in the first instance to federal acknowledgment proceedings before the BIA.  See Golden Hill Paugussett Tribe of Indians v. Weicker, 839 F. Supp. 130 (D. Conn. 1993).

On appeal, the Second Circuit found that "[n]either lack of standing [n]or failure to exhaust administrative remedies provides good grounds for the district court's dismissal of plaintiff's suit," noting that "tribal status for purposes of obtaining federal benefits is not necessarily the same as tribal status under the Nonintercourse Act [and] that tribal status for purposes of the Act relates both to standing to sue under the Act and to the merits of a claim under the Act.  The two issues are distinct, though they overlap to a considerable extent."  See Golden Hill, 39 F.3d at 59-61.  The Second Circuit observed that "Golden Hill alleged that it is an Indian tribe" and thus "the plaintiff tribe ha[d] pled in each of its three complaints all of the elements of a Nonintercourse Act claim," but found that

5

"deferral [in the first instance to the BIA] [wa]s fully warranted . . . where the plaintiff ha[d] already invoked the BIA's authority." Id. at 57-58, 60. While the Second Circuit observed that "[r]egardless of whether the BIA were to acknowledge Golden Hill as a tribe for purposes of federal benefits, Golden Hill must still turn to the district court for an ultimate judicial determination of its claim under the Nonintercourse Act," the court relied on the doctrine of primary jurisdiction in holding that "the BIA is better qualified by virtue of its knowledge and experience to determine at the outset whether Golden Hill meets the criteria for tribal status" and that "[t]he BIA's resolution of these factual issues regarding tribal status will be of considerable assistance to the district court in ultimately deciding Golden Hill's Nonintercourse Act claims." Id. 58-60. The court noted that "[a] federal court, of course, retains final authority to rule on a federal statute, but should avail itself of the agency's aid in gathering facts and marshaling them into a meaningful pattern." Id. at 60 (citing Fed. Maritime Bd. v. Isbrandtsen Co., 356 U.S. 481, 498 (1958)). Accordingly, the Second Circuit remanded the case to the district court "with directions to stay the proceedings . . . pending the BIA's consideration of Golden Hill's claim for tribal recognition, the duration and termination of the stay to be determined in accordance with this opinion." Id. at 61.

On June 14, 2004, the BIA issued its Final Determination, rejecting plaintiff's petition for federal tribal acknowledgment, of which decision the defendant State provided notice to the Court.  See Notification [Doc. # 281].  As noted by the State, under the acknowledgment regulations the Final Determination would become final and effective 90 days from publication in the Federal Register unless a request for reconsideration was filed. See 25 C.F.R. § 83.11.  The relevant findings of the BIA included that the 25 C.F.R. § 83.7(b) requirement of a distinct tribal community from historical times to the present had not been satisfied after 1823, see Final Determination [Doc. # 331, Ex. A] at 91-92, that the § 83.7(c) requirement of political influence or authority over tribal members from historical times to the present had not been satisfied after 1802, id. at 102-03, and that the § 83.7(e) requirement that the purported tribe descended from a historical tribe had also not been satisfied, id. at 128-29.

On September 6, 2004, plaintiff filed a request for reconsideration.  See Status Report [Doc. # 286].  Accordingly, on December 23, 2004, the Court administratively closed this case pending final determination by the Interior Board of Indian Appeals (the "IBIA").  See Order of Dismissal [Doc. # 291].  On May 17, 2005, Golden Hill moved to reopen the case, stating that its motion was made within 60 days "following action by the

United States Department of the Interior, on the plaintiff's
petition for acknowledgment," Mot. to Restore [Doc. # 292], which
motion the Court granted.  Thereafter, plaintiff filed the
current Amended Complaint [Doc. # 325] and briefing on the
instant motions ensued.

## II.  Standard

"After the pleadings are closed but within such time as not
to delay the trial, any party may move for judgment on the
pleadings."  Fed. R. Civ. P. 12(c).  The "standard for granting a
Rule 12(c) motion for judgment on the pleadings is identical to
that of a Rule 12(b)(6) motion for failure to state a claim."
Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123,
126 (2d Cir. 2001) (citations omitted).  "In both postures, the
district court must accept all allegations in the complaint as
true and draw all inferences in the non-moving party's favor.
The court will not dismiss the case unless it is satisfied that
the complaint cannot state any set of facts that would entitle
him to relief."  Id.  (citations omitted).  The Court's
consideration may include "any written instrument attached to
[the complaint] as an exhibit, . . . materials incorporated in it
by reference, . . . and documents that, although not incorporated
by reference, are 'integral' to the complaint," and any matters
that are subject to judicial notice.  Sira v. Morton,  380 F.3d
57, 67 (2d Cir. 2004); Chambers v. Time Warner, Inc., 282 F.3d

147, 153 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").

**III. Discussion**

Defendants contend that the Court should take judicial notice of the BIA's factual findings in its Final Decision rejecting plaintiff's petition for federal tribal acknowledgment and defer to and/or give collateral estoppel effect to those findings, which defendants argue would result in a finding that plaintiff's Nonintercourse Act cannot succeed because plaintiff cannot satisfy the component of that claim requiring plaintiff to establish that it is "an Indian tribe," see Seneca Nation of Indians v. N.Y., 382 F.3d 245, 258 (2d Cir. 2004).

A.   Judicial Notice

As a general rule "[j]udicial notice may be taken of public filings." Kavowras v. N.Y. Times Co., 328 F.3d 50, 57 (2d Cir. 2003). "Among the matters of which courts may take judicial notice are decisions of an administrative agency." Reynolds v. Blumenthal, 04cv218 (PCD), 2006 WL 2788380, at *3 n.7 (D. Conn. Sept. 26, 2006) (citing Furnari v. Warden, 218 F.3d 250, 255 (3d Cir. 2000) ("[I]t is proper for this Court to take judicial

9

notice of decisions of an administrative agency."); <u>Opoka v. INS</u>, 94 F.3d 392, 394 (7th Cir. 1996) ("[I]t is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice.").

Thus, the Court takes judicial notice of the BIA's Final Determination, including its factual findings therein, thus bringing the Final Determination (including the factual findings) within the scope of materials that can be considered on a Rule 12(c) motion. The issue thus becomes whether the Court should defer to the BIA's factual findings, whether those findings should be given collateral estoppel effect in this action and, if so, whether those findings preclude plaintiff's Nonintercourse Act claim due to inability to demonstrate tribal status.

B.  <u>Deference Under Primary Jurisdiction Doctrine</u>

Defendants contend that the Court should grant deference to the BIA's factual determinations and it is obvious that some amount of deference or other effect would need to be granted a determination made by an agency to which a court initially deferred under the doctrine of primary jurisdiction, otherwise the doctrine would be meaningless. After all, "[t]he primary jurisdiction doctrine serves two interests: consistency and uniformity in the regulation of an area which Congress has entrusted to a federal agency; and the resolution of technical

questions of facts through the agency's specialized expertise, prior to judicial consideration of the legal claims." Golden Hill, 39 F.3d at 59.  These interests would not be served if the agency's determination did not carry some weight once adjudication of the case in federal court was reopened.

However, the guidance provided to district courts on the degree or nature of the deference due such an agency determination is somewhat elusive.  For example, as the Second Circuit noted on appeal in this case, "[a] federal court, of course, retains final authority to rule on a federal statute, but should avail itself of the agency's aid in gathering facts and marshaling them into a meaningful pattern," observing that "the BIA is better qualified by virtue of his knowledge and experience to determine at the outset whether Golden Hill meets the criteria for tribal status" and "[t]he BIA's resolution of these factual issues regarding tribal status will be of considerable assistance to the district court in ultimately deciding Golden Hill's Nonintercourse Act claims." Golden Hill, 39 F.3d at 60 (emphasis added).  Other explanations offered by the United States Supreme Court and the Second Circuit are similarly vague.  See, e.g., Ricci v. Chicago Mercantile Exch., 409 U.S. 289, 305-06 (1973) (noting that the matters at issue were those "typically lying at the heart of an administrative agency's task and . . . appear to be matters that Congress has placed within the jurisdiction of

the Commodity Exchange Commission.  We should recognize that
courts, while retaining the final authority to expound the
statute, <u>should avail themselves of the aid</u> implicit in the
agency's superiority in gathering the relevant facts and in
marshaling them into a meaningful pattern") (emphasis added);
<u>United States v. W. Pacific R.R. Co.</u>, 352 U.S. 59, 64 (1956) (in
the case of application of primary jurisdiction, "the judicial
process is suspended pending referral of such issues to the
administrative body <u>for its views</u>") (emphasis added); <u>Ellis v.
Tribune Tel. Co.</u>, 443 F.3d 71, 81 (2d Cir. 2006) ("The [primary
jurisdiction] doctrine's central aim is to <u>allocate initial
decisionmaking responsibility</u> between courts and agencies and to
ensure that they do not work at cross-purposes.") (emphasis
added); <u>Tassy v. Brunswick Hosp. Ctr., Inc.</u>, 296 F.3d 65, 68 (2d
Cir. 2002) ("Since the inception of the [primary jurisdiction]
doctrine, courts have resisted creating any fixed rules or
formulas for its application.").

The most concrete direction is found in the decisions in
<u>Ricci</u> and <u>Tassy</u>, which suggest that factual determinations made
by an agency operating under the primary jurisdiction doctrine
should not be relitigated in federal court.  See <u>Ricci</u>, 409 U.S.
at 306 ("The adjudication of the Commission . . . would obviate
the necessity for the antitrust court to relitigate the issues
actually disposed of by the agency decision); <u>Tassy</u>, 296 F.3d at

68 (discussing the primary jurisdiction "principle . . . that in cases raising issues of facts not within the conventional expertise of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.  This is so even though <u>the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined</u>") (emphasis added).

These statements suggest that this Court should accord some amount of deference to the factual findings made by the BIA.  Indeed, as noted above, if such effect were not afforded to the BIA's findings, the purposes of primary jurisdiction would not be served.  However, because, as described below, application of collateral estoppel to the BIA's findings renders the same outcome, the Court need not define the boundaries or degree of this deference.[3]

<u>C.    Collateral Estoppel</u>

Apart from the issue of the degree or nature of deference due a factual determination by an agency to which a court

---

[3] The Court notes, as defendants do, that Golden Hill could have challenged the BIA's findings by seeking review under the Administrative Procedure Act, but it has chosen not to do so. <u>Cf</u>. <u>Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic</u>, 400 U.S. 62, 72 (1970) (noting "[defendant] cannot force collateral redetermination of the same issue [decided by the Federal Maritime Commission] in a different and inappropriate forum," observing that defendant chose not to seek APA review of Federal Maritime Commission's order).

initially deferred under the doctrine of primary jurisdiction, the BIA's factual findings are also entitled to collateral estoppel effect in this proceeding.

"We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality.  'When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.'"  Astoria Fed. Savings & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991) (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)). In order for collateral estoppel to apply to an adjudicative determination, "First, the issue as to which preclusion is sought must be identical to the issue decided in the prior proceeding. Issues of fact may bear the same label without being identical. They are not identical if the legal standards governing their resolution are significantly different. . . . Further, even if the issues in the two proceedings are identical, a decision by an administrative agency cannot be the basis for collateral estoppel unless it was an adjudicative decision.  An agency action granting or denying a privilege is not an adjudicative decision unless the agency has made its decision using procedures

14

substantially similar to those employed by the courts."

Metromedia v. Fugazy, 983 F.2d 350, 365 (2d Cir. 1992), abrogated
on other grounds as recognized by Yung v. Lee, 432 F.3d 142, 147-
48 (2d Cir. 2005).

In determining whether an agency action constitutes an
"adjudicative" or "judicial" decision, the Second Circuit has
considered the factors set out in the Restatement (Second) of
Judgments § 83(2).  See Delamater v. Schweiker, 721 F.2d 50, 53-
54 (2d Cir. 1983).  Section 83(2) provides that:

> An adjudicative determination by an administrative
> tribunal is conclusive under the rules of res judicata
> only insofar as the proceeding resulting in the
> determination entailed the essential elements of
> adjudication, including: (a) Adequate notice to persons
> who are to be bound by the adjudication, . . . (b) The
> right on behalf of party to present evidence and legal
> argument in support of the party's contentions and fair
> opportunity to rebut evidence and argument by opposing
> parties; (c) A formulation of issues of law and fact in
> terms of the application of rules with respect to
> specified parties concerning a specified transaction,
> situation, or status, or a specific series thereof; (d)
> A rule of finality, specifying a point in the
> proceeding when presentations are terminated and a
> final decision is rendered; and (e) Such other
> procedural elements as may be necessary to constitute
> the proceeding a sufficient means of conclusively
> determining the matter in question, having regard for
> the magnitude and complexity of the matter in question,
> the urgency with which the matter must be resolved, and
> the opportunity of the parties to obtain evidence and
> formulate legal contentions.

Plaintiff does not dispute that the BIA's Final
Determination is now a final decision, as is necessary for
application of collateral estoppel, nor does plaintiff contest

defendants' description of the BIA processes and procedures
provided, resulting in a full and fair opportunity to litigate.
Such procedures include: the filing of a letter of intent by the
petitioning group (plaintiff), followed by submission of a
petition with evidence to demonstrate that the group satisfies
the seven tribal acknowledgment criteria, see 25 C.F.R. §§ 83.4,
83.6; preliminary review by the BIA of the petition evidence and
provision of assistance to petitioner in supplementing and/or
revising its petition, id. § 83.10(a)-(b); issuance of a BIA
"letter of obvious deficiencies," identifying deficiencies and
allowing petitioner to supplement and/or revise its petition
accordingly, id. § 83.10(b); placing the petition on "active
consideration," id. § 83.10(f), after which the BIA issues a
proposed finding and the petitioner and other interested parties
are given the opportunity to submit arguments and evidence to
rebut or support the proposed findings, id. § 83.10(g), (i), (j),
including a petitioner reply to any submissions by interested
parties, id. § 83.10(k); issuance of a final determination by the
BIA, id. § 83.10(m), of which petitioner may seek independent
review and reconsideration with the IBIA, including a hearing
before an administrative law judge on disputed issues of fact,
and may also seek review from the Secretary of the Interior, id.
§ 83.11; and judicial review under the Administrative Procedure
Act ("APA"), 5 U.S.C. § 701, et seq., after exhaustion of

16

administrative remedies.

Plaintiff does not dispute the availability of the above protections and procedures, nor that it availed itself of these procedures during the pendency of its petition before the BIA. Indeed, review of the Final Determination illustrates that the regulatory procedural framework was followed in this case – with petitioner filing a letter of intent followed by a petition, the BIA providing notice of its Preliminary Finding, and petitioner having the opportunity to request reconsideration and also to submit comments and arguments before issuance of the Final Determination.  Plaintiff details examples of "prejudicial conduct" which it contends infected the BIA's ultimate decision, see Pl. Opp. at 13, which arguments could be advanced in an APA judicial review context, but do not support any claim that petitioner was not afforded a full and fair opportunity to litigate before the BIA.  Indeed, plaintiff does not appear to contest that it had such an opportunity before the BIA.[4]

Thus, the Court must next consider whether the BIA's Final Determination constituted an "adjudicative" determination, by applying the Section 83(2) factors.  The procedures set out by the BIA regulations provide for notice, presentation of evidence

---

[4] Plaintiff's suggestion that it is entitled to additional discovery is inapposite as it does not claim that it was denied adequate discovery in the BIA proceeding such that its ability to fully and fairly litigate was limited.

17

and arguments (including the opportunity to revise and
supplement), as well as the opportunity to respond to the
evidence and arguments of other interested parties and the
proposed finding of the BIA, the clear application of seven
mandatory criteria for federal tribal acknowledgment (which the
BIA's Final Determination reflects), and rules of finality,
including procedures for internal reconsideration and review, as
well as judicial review under the APA.  Thus, the Court concludes
that the BIA's Final Determination was an "adjudicative" one,
sufficient for application of the collateral estoppel doctrine.[5]

   D.   Tribal Status

   Plaintiff's reliance on the Second Circuit's observation
that the criteria for federal tribal acknowledgment and the
requirements for existence as a "tribe" for recovery under the
Nonintercourse Act are distinct misses the mark because, while
accurate, it does not undermine application of deference and/or
collateral estoppel to those factual determinations made by the
BIA which are relevant to the assessment of plaintiff's
Nonintercourse Act claim in this court.  Indeed, the Second

---

   [5] Even though plaintiff does not contend that collateral
estoppel cannot be invoked here because it would be deprived of
its right to a jury trial on those factual issues determined by
the BIA, the comment to Restatement Section 27 shows such an
argument to lack viability: "[t]he determination of an issue by a
judge in a proceeding conducted without a jury is conclusive in a
subsequent action whether or not there would have been a right to
a jury in that subsequent action if collateral estoppel did not
apply."  Restatement 2d Judgments § 27 cmt. d.

Circuit also observed that "[t]he Montoya/Candelaria definition and the BIA criteria both have anthropological, political, geographical and cultural bases and require, at a minimum, a community with a political structure.  The two standards overlap, though their application might not always yield identical results."  Golden Hill, 39 F.3d at 59.

Giving collateral estoppel effect to the factual findings of the BIA in its Final Determination, as upheld by subsequent administrative review, the Court considers whether those findings dictate a conclusion that plaintiff cannot demonstrate that it is an "Indian tribe," as defined in Montoya and its progeny, thus precluding recovery under the Nonintercourse Act.

As noted above, in order to demonstrate tribal status for purposes of the Nonintercourse Act, Montoya and its progeny require that "an Indian Group must show that it is 'a body of Indians of the same or similar race, united in a community under one leadership or government, and inhabiting a particular though sometimes ill-defined territory."  Golden Hill, 39 F.3d at 59 (citing Candelaria, 271 U.S. at 442; Montoya, 180 U.S. at 266).  The BIA's factual findings preclude plaintiff's satisfaction of all of these criteria.  Specifically, the BIA concluded that Golden Hill had not existed as a "distinct tribal community" after 1823, Final Decision at 91-92, that there was no evidence of "political influence or authority over tribal members" after

19

1802, and in fact that "two of the three named and documented
Turkey Hill descendants stated in 1910 that the Turkey Hill tribe
had long since ceased to exist as a political entity and made no
mention of the Golden Hill descendants," id. at 102-03.  Giving
collateral estoppel to these findings, they preclude Golden Hill
from demonstrating in this action that it is a group "united in a
community under one leadership or government."  As this is a
component of tribal status under Montoya and its progeny, and as
tribal status is one element of a prima facie case under the
Nonintercourse Act, these findings preclude recovery by Golden
Hill under the Nonintercourse Act as a matter of law.[6]

**IV.  Conclusion**

     For the foregoing reasons, defendants' Rule 12(c) motions

---

[6] N.Y. v. Shinnecock Indian Nation, 400 F. Supp.2d 486
(E.D.N.Y. 2005), cited by both sides, does not alter this
conclusion.  First, collateral estoppel by BIA findings was not
an issue in that case as the BIA federal acknowledgment
proceeding had not yet concluded.  Id. at 493.  Moreover, the
Shinnecock court found that (contrary to the BIA's findings here)
the purported tribe "functioned under a political leadership for
more than 200 years, having met as a tribe to elect tribal
leaders in every year from 1792 through 2004" and that "the
Shinnecock Indian Nation is united in a community under one
leadership or government."  Id. at 490.  Thus, although the
Shinnecock court also observed that "[t]he Shinnecock Nation is,
and has been, recognized as an Indian tribe by the State of New
York for more than 200 years," id. at 487, and plaintiff in this
case is recognized by the State of Connecticut as an "indigenous
tribe," see Conn. Gen. Stat. § 49-57a(b), such fact was not the
exclusive or determinative factor in Shinnecock, nor should it be
here.  See also Conn. Gen. Stat. § 47-66h(b) ("Nothing in this
chapter shall be construed to confer tribal status under federal
law on the indigenous tribes named in section 47-59a.").

[Docs. ## 330, 333, 334, 335, 339, 342, 346, 347, 350, 357, 362, 364, 381] are GRANTED.[7]   The Clerk is directed to close this case.

                     IT IS SO ORDERED.

                     _____/s/_____
                     Janet Bond Arterton
                     United States District Judge

**Dated at New Haven, Connecticut this 29th day of November, 2006.**

---

[7] Because the Court concludes that Golden Hill cannot satisfy the tribal status component of a Nonintercourse Act claim as a matter of law, it does not reach defendants' arguments under Rule 12(b)(6) regarding equitable defenses.

21